FEDERAL DEPOSIT INSURANCE
CORPORATION, in its Corporate
Capacity, Plaintiff–Appellee,

v.

Billy D. MASSINGILL, Defendant–
Appellant.

No. 93–1258.

United States Court of Appeals,
Fifth Circuit.

Aug. 22, 1994.

Floyd D. Holder, Jr., Richard D. Ladd, John Simpson, Splawn & Simpson, Lubbock, TX, for appellant.

Harold H. Pigg, Lubbock, TX, S. Alyssa Roberts, F.D.I.C., Washington, DC, for appellee.

ON PETITION FOR REHEARING

Before HIGGINBOTHAM, WIENER, Circuit Judges, and KAUFMAN, District Judge.*

FRANK A. KAUFMAN, District Judge:

On July 6, 1994, this Court, in an opinion filed on that date, affirmed the judgment of the district court in favor of appellee Federal Deposit Insurance Corporation ("FDIC") in all respects.[1] On July 19, 1994, appellant Billy D. Massingill timely filed a petition for rehearing with this Court. Because we have re-evaluated our position with regard to a portion of our said earlier opinion, we file this Supplementary Opinion but nevertheless deny appellant's petition for rehearing.

I.

In his aforementioned petition, Massingill raises several arguments in support of recon-

---

* District Judge of the District of Maryland, sitting by designation.

1. *See FDIC v. Massingill,* 24 F.3d 768 (5th Cir. 1994).

sideration of this Court's prior decision in this case. "In the main, the petition rehashes arguments made to, and rejected by, the panel in our earlier opinion, and to that extent requires no comment." *Anderson v. Beatrice Foods Co.,* 900 F.2d 388, 396 (1st Cir.), *cert. denied,* 498 U.S. 891, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990). The sole exception is Massingill's contention with regard to his asserted defense of impairment of collateral. Before addressing our disposition of that defense, it is helpful for us to re-visit the circumstances surrounding this case in the district court below.

As we recounted in our earlier Opinion in this case,

> This case arises from an action brought by the [FDIC] against Billy D. Massingill for the amounts owed upon two promissory notes ("Notes") issued by Massingill and another individual to a now-defunct New Mexico bank. United States District Judge Sam R. Cummings, in a partial summary judgment order issued pursuant to Fed.R.Civ.P. 56(d) and upon the conclusion of a bench trial, entered judgment for the FDIC in the full amounts requested by that agency in connection with both Notes....
>
> Billy D. Massingill and Charles S. Christopher, both residents of Texas, executed two promissory notes in favor of Moncor Bank, N.A., ("Moncor" or "Bank"), located in Hobbs, New Mexico. Note 1, in the amount of $360,000, was secured by 20,000 shares of stock in Fiberflex Products, Inc. ("Fiberflex"), a Texas corporation. Massingill and Christopher signed that Note as co-makers on March 22, 1984, in order to acquire those shares of Fiberflex. Massingill was a founding shareholder and director of Fiberflex, but he sold his shares to Christopher later in 1984....
>
> Christopher and Massingill, again as co-makers, executed another promissory note, referred to herein as Note 2, in favor of Moncor, in the amount of $125,500, in December 1984....
>
> ....
>
> The defaulted Note 2 eventually was renewed. That renewed note will be referred to as Renewed Note 2. Renewed Note 2, payable to Moncor Bank, was a promissory note in the amount of $125,150, and was secured in part by 21,500 shares of Fiberflex stock and in part by the assignment to Moncor of a life insurance policy belonging to Christopher.

*Massingill,* 24 F.3d at 771–72.

Massingill, in his answer to the FDIC's complaint in the district court below, as well as in his response to a motion for summary judgment filed by the FDIC, advanced, *inter alia,* as a defense, impairment of collateral solely with regard to Renewed Note 2.[2] In that regard, Massingill contended that he signed Renewed Note 2 as an accommodation maker, or surety, to accommodate Christopher, and, thus, could assert an impairment defense. Massingill admittedly signed Note 1 as a co-maker, along with Christopher. It appears from the record of the district court proceedings that all parties assumed and impliedly agreed that a co-maker cannot assert such an impairment defense.

Massingill asserts that the FDIC obtained the collateral securing the Notes, which included several thousand shares of Fiberflex, in 1985, and "holds the stock to this day." Massingill also alleges that he was not notified by the FDIC that it held the stock until 1991 and states that the stock possessed

---

2. Massingill, in his filings before the district court, also alleged that the FDIC failed to dispose of the collateral which it had seized in a commercially reasonable manner, pursuant to section 9–504 of the Uniform Commercial Code ("UCC"). That provision, Massingill claimed, requires a creditor to dispose of collateral in a commercially reasonable manner and, according to Massingill, such appropriate disposition must be "prove[n]" by the FDIC. Massingill advanced that argument in addition to his other contention which he labeled the "impairment of collateral" defense. Massingill may also have intended to characterize that UCC-based position as an element of the FDIC's claim, rather than as an affirmative defense. It is unclear from the record exactly what factual assertions underlay that argument, but it appears as if Massingill did not limit its scope solely to Renewed Note 2. In any event, we need not discuss that matter further as Massingill failed to pursue that avenue in his subsequent filings in the district court after that court entered its aforementioned Rule 56 Order or in his briefs or argument filed in this Court. *See, infra,* for further discussion in that regard.

substantial value until Fiberflex's bankruptcy in 1987. According to Massingill, the FDIC should have sold the Fiberflex stock prior to 1987, and, if it had so done, it would have received substantial sums which, in turn, would have offset some of Massingill's alleged liability with regard to Renewed Note 2.

The district court, in the course of denying the FDIC's motion for summary judgment, issued an Order, as mentioned *supra*, pursuant to Fed.R.Civ.P. 56(d), stating, *inter alia*, that Massingill signed Renewed Note 2 as a co-maker. Consequently, Judge Cummings did not include the impairment question as an issue for trial. The district court did not again allude to that issue, nor did any party raise that issue before this case was appealed to this Court. Then, in his briefs filed with this Court, Massingill asserted, *inter alia*, that the district court wrongly precluded the impairment of collateral defense from trial.[3]

Massingill devoted all of his written and oral argumentation in this Court prior to the filing by this Court of its opinion on July 6, 1994, to two propositions. First, Massingill claimed that he was not barred by the teachings initially enunciated in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), by 12 U.S.C. § 1823,[4] or by any federal common-law holder-in-due-course doctrine from asserting the impairment defense against the FDIC, inasmuch as the alleged impairment stemmed from the "bad acts" of the FDIC itself and not those of the private institution prior to its acquisition by the federal agency. Second, Massingill claimed that, because he signed Renewed Note 2 as an accommodation maker, rather than as a co-maker, the impairment defense was available to him with regard to that Note. Massingill did not contend that a co-maker was entitled to raise that defense, advanced no choice-of-law question in connection with the impairment issue, and made no

attempt to distinguish this circuit's decision in *United States v. Unum, Inc.*, 658 F.2d 300 (5th Cir. Unit A 1981), in which Judge Politz employed a " 'uniform [federal] rule' to determine that 'a maker of a note, as opposed to a surety, is not entitled to invoke this defense' of impairment of collateral." *Massingill*, 24 F.3d at 779 (quoting *Unum*, 658 F.2d at 304).

This Court, in affirming the district court's determination that Massingill signed Renewed Note 2 as a co-maker, noted:

> There may be a question as to whether Texas law denies to a co-maker the defense of impairment of collateral. *See FDIC v. Blanton*, 918 F.2d 524, 530 (5th Cir.1990). Under New Mexico law, a co-maker in Massingill's situation seemingly may raise that defense and obtain discharge "to the extent the impairment causes [him] to pay more than [he] would have been obliged to pay, taking into account the rights of contribution, if impairment had not occurred." N.M.Stat.Ann. § 55–3–605(f) and offic. cmt. 7 (Michie 1992). However, we need not tarry in connection with any difference between Texas and New Mexico case law in this regard in the light of this circuit's decision in [*Unum*].

*Id.*

## II.

▐ Presently, in Massingill's petition for rehearing, Massingill attempts to distinguish *Unum*, pointing out that "*Unum* involved a federal lender [the Small Business Administration], whereas the present case involves a private lender whose loan was taken over by FDIC after the private lender failed." Consequently, argues Massingill, this Court should choose a state-law rule of decision, rather than adopt a federal rule, pursuant to the balancing test delineated in *United States v. Kimbell Foods, Inc.*, 440 U.S. 715,

---

3. Massingill, in his briefs filed with this Court, did not explicitly confine his impairment defense to Renewed Note 2 alone. However, the thrust of his argument, particularly when read in the light of his filings before the district court, *see supra*, suggests that Massingill only sought to assert that defense with regard to Renewed Note 2 and not in connection with Note 1.

4. That statute provides in pertinent part, subject to certain exceptions not relevant to this case, that "[n]o agreement which tends to diminish or defeat the interest of the Corporation [FDIC] in any asset acquired by it ... shall be valid against the Corporation."

728–29, 99 S.Ct. 1448, 1458–59, 59 L.Ed.2d 711 (1979).[5]

In the light of the Supreme Court's recent decision in *O'Melveny & Myers v. FDIC*, —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), we agree that, based upon the facts of this case, we should not create a substantive federal common-law rule of decision and rather should select an appropriate state's principles of law as our rule of decision with regard to the ability of Massingill to assert his defense of impairment of collateral in this case. *See also Resolution Trust Corp. v. Maplewood Investments*, 31 F.3d 1276, 1292–94 (4th Cir.1994) (discussing the import of *O'Melveny* ).

In *O'Melveny*, —— U.S. at ——, 114 S.Ct. at 2052, Justice Scalia addressed the question of whether state law or "federal common law determines the ... narrow question [of] whether knowledge by [bank] officers ... acting [against the bank's interest] will be imputed to the FDIC when it sues as receiver of the" bank. In deciding that state law was appropriate, Justice Scalia wrote:

> The rules of decision at issue here do not govern the primary conduct of the United States or any of its agents or contractors, but affect only the FDIC's rights and liabilities, as receiver, with respect to primary conduct on the part of private actors that has already occurred. Uniformity of law might facilitate the FDIC's nationwide litigation of these suits, eliminating state-by-state research and reducing uncertainty—but if the avoidance of those ordinary consequences qualified as an identifiable federal interest, we would be awash in "federal common-law" rules.

. . . .

We conclude that this is not one of those extraordinary cases in which the judicial creation of a federal rule of decision is warranted.

*Id.* at —— – ——, 114 S.Ct. at 2055–56.

In the light of *O'Melveny*, there is a heavy presumption in favor of application of a rule of decision in accordance with [state] law as opposed to the creation of a federal rule of decision. *See id.* at —— – ——, 114 S.Ct. at 2055 (commenting that "there is no federal policy that the [FDIC] fund should always win"). Further, any perceived need for uniformity—"that most generic (and lightly invoked) of alleged federal interests"—is inadequate to disturb that presumption. *Id.*, at ——, 114 S.Ct. at 2055.... In sum, this case just "is not one of those extraordinary cases in which the judicial creation of a federal rule of decision is warranted." *O'Melveny*, —— U.S. at ——, 114 S.Ct. at 2056.

*Maplewood*, 31 F.3d at 1293–94.

For that reason, in accordance with our understanding of *O'Melveny* and its impact upon the application of the *Kimbell Foods* test, we withdraw our previous reliance upon *Unum* in our earlier opinion in this case. *See Massingill*, 24 F.3d at 779–80. Ordinarily, in this circumstance, we would be compelled to decide which state's principles of law—those of Texas or those of New Mexico—should apply to disputes in connection with the collateral at issue, and, if appropriate under the chosen state's principles of law, remand that portion of this case to the district court for further proceedings. Nevertheless, for reasons which we discuss immediately *infra* in this Supplementary Opinion, in this case we will not so do.

---

**5.** Under the *Kimbell Foods* test, this Court, because it possesses jurisdiction to apply in this case a federal common-law rule, must consider, as a matter of discretion and judicial prudence, whether or not to adopt ... [a] state-law rule as the federal rule of decision. The three factors utilized in reaching such a conclusion include whether "federal programs" are involved which " 'by their nature are and must be uniform in character throughout the Nation' ... [thereby requiring] a na-

tionally uniform body of law," *id.* at 728, 99 S.Ct. at 1458 (quoting *United States v. Yazell*, 382 U.S. 341, 354, 86 S.Ct. 500, 507, 15 L.Ed.2d 404 (1966)), whether the state law might "frustrate specific objectives of the federal programs," *id.*, and whether and to what "extent ... application of a federal rule would disrupt commercial relationships predicated on state law." *Id.* 440 U.S. at 729, 99 S.Ct. at 1459.

*Resolution Trust Corp. v. Maplewood Investments*, 31 F.3d at 1290–91 (4th Cir.1994).

### III.

■ As discussed in Part I of this Supplementary Opinion, *supra*, Massingill never raised the arguments that a co-maker may assert the impairment defense or that a state-law rule of decision, rather than a substantive federal common-law rule of decision, should apply to that question. Massingill failed entirely to address the import of this circuit's decision in *Unum*, despite the invocation of that case by appellee FDIC in its reply brief to this Court. Although, as we acknowledge, *supra*, that case, in a post-*O'Melveny* setting, is not dispositive, it is relevant and should have been addressed by Massingill.

"[A]ppellant cannot justify raising [that argument] for the first time in his petition for rehearing." *Lowry v. Bankers Life and Cas. Retirement Plan*, 871 F.2d 522, 525 (5th Cir. 1989), *cert. denied*, 493 U.S. 852, 110 S.Ct. 152, 107 L.Ed.2d 111 (1990). Appellant raised state choice-of-law questions with regard to one or more other issues present in this case,[6] but, in connection with his assertion of the impairment defense, he chose to focus his efforts upon refutation of the possible preclusive effect of *D'Oench* and related doctrines and upon his contention that he signed Renewed Note 2 as an accommodation maker.

We agree with the point of law raised by Massingill in his petition for rehearing that this Court should apply a state-law rule of decision. His concurrent claim that, accordingly, as a co-maker, he nonetheless may assert the impairment defense is one which depends upon our interpretation of the law of the state (Texas or New Mexico) which we would choose to utilize. As this circuit stated in *Holley v. Seminole County School Dist.*, 763 F.2d 399, 401 (5th Cir.1985), "since appell[ant] did not brief or argue [those matters] in [his] briefs to this panel we will not entertain those thorny questions presented for the first time in appell[ant's] petition for rehearing." *See also Costo v. United States*, 922 F.2d 302, 302–03 (6th Cir.1990); *Anderson*, 900 F.2d at 396–97.

Accordingly, Massingill's petition for rehearing is hereby denied.

DENIED.

---

**6.** For example, Massingill raised the question of whether the district court should have applied Texas law to determine whether or not Note 1 was validly accelerated. *See Massingill*, 24 F.3d at 774–75.