**RESOLUTION TRUST CORPORATION,
in its corporate capacity, Plaintiff,**

**v.**

**John B. SANDS, David K. Sands, Laurie H. Sands Harrison, Martin Hearne, Curtis Todd Miller, Richard L. Park, James D. Alexander, Donald W. Crisp, individually and as Trustee of the Caroline Hunt Trust Estate, and William F. Conger, Defendants.**

**Civ. A. No. 3:93–CV–0956–D.**

United States District Court,
N.D. Texas,
Dallas Division.

Sept. 9, 1994.

For the reasons set out, the court holds that *O'Melveny & Myers* does not disturb existing Fifth Circuit precedent, at least insofar as it controls resolution of the present motion, and that the RTC's motion to strike and to limit discovery should be granted in part and denied in part.

John A. Scully, John M. Sjovall, and Mike Bennett (argued), of Cowles & Thompson, and Sabrina C. Arellano and Andrew F. Emerson, of Arellano & Emerson, Dallas, TX, for plaintiff.

Schuyler B. Marshall (argued) and Stephen C. Rasch, of Thompson & Knight, George M. Kryder, III and J. Stuart Tonkinson, of Carrington, Coleman, Sloman & Blumenthal, L.L.P., and Rosemary Stewart of Akin, Gump, Strauss, Hauer & Feld, Dallas, TX, for defendants.

FITZWATER, District Judge:

In this action by plaintiff Resolution Trust Corporation, in its corporate capacity ("RTC"), to recover from directors and officers of a failed savings and loan on theories of negligence, gross negligence, and breach of fiduciary duty, the RTC moves to strike certain affirmative defenses. One of the principal questions presented by the motion is whether the Supreme Court's recent decision in *O'Melveny & Myers v. FDIC,* —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), displaces Fifth Circuit law that precludes directors and officers from maintaining certain affirmative defenses. The RTC also moves the court to limit the scope of discovery regarding alleged negligence of pre-closure regulatory activities and post-closure regulatory management of the assets of the failed institution.

## I

Plaintiff RTC brings this action in its corporate capacity against certain directors and officers of the failed Southwest Savings Association ("Southwest"), contending they are liable on claims of negligence, gross negligence, and breach of fiduciary duty for acts or omissions committed in these capacities.[1] In sum, the RTC alleges that defendants failed to exercise adequate care and diligence in the administration, direction, and management of the affairs of Southwest, and generally failed to carry out their respective duties as directors or officers, thereby causing or allowing Southwest to make, secure, renew, or collect loans (particularly commercial real estate loans) in an abnormal, imprudent, or unsafe manner, and causing or allowing Southwest to operate in a way that was fiscally unsound. The RTC charges that defendants' failure properly to discharge their duties proximately caused Southwest to incur substantial damages arising from various commercial real estate transactions.

Defendants are litigating this case in two groups. The first is composed of defendants who served at relevant times as directors of Southwest (the "Director Defendants"), including John B. Sands, David K. Sands, Laurie Sands Harrison, and Donald W. Crisp ("Crisp"), individually and as Trustee of the Caroline Hunt Trust Estate.[2] The second consists of defendants who served at relevant times as Southwest officers (the "Officer Defendants"), including H. Martin Hearne ("Hearne"), C. Todd Miller ("Miller"), Rich-

---

1. This case is the subject of a prior published opinion of the court. *See RTC v. Sands,* 151 F.R.D. 616 (N.D.Tex.1993) (appeal from magistrate judge decision denying motion for protective order).

2. In his capacity as Trustee of the Caroline Hunt Trust Estate, Crisp moved for summary judgment. The court granted the motion in a memorandum opinion and order filed June 3, 1994,

and on August 18, 1994 filed a Fed.R.Civ.P. 54(b) final judgment dismissing Crisp, in his capacity as Trustee, as a party-defendant. The RTC's claims against Crisp in this capacity are no longer before the court for consideration, and Crisp, in his capacity as Trustee, is not included among the Director Defendants whose affirmative defenses are addressed today.

ard L. Park ("Park"), and James D. Alexander.[3]

According to the RTC's complaint, Southwest was a state-chartered stock savings and loan association. Following multimillion dollar losses in 1988 and 1989 attributable to deficient commercial real estate loans, the Office of Thrift Supervision ("OTS") placed Southwest under RTC conservatorship on May 18, 1990. On June 15, 1990 the OTS appointed the RTC as receiver of Southwest. As receiver, the RTC succeeded to all rights, titles, and privileges of Southwest with respect to its assets, including claims against Southwest's officers and directors. On the same day that the RTC became receiver, it transferred all of Southwest's assets, including the claims the RTC asserts in this lawsuit, to Southwest Federal Savings Association ("Southwest Federal"). Also on the same day, the OTS appointed the RTC as conservator of Southwest Federal. On July 26, 1991 the OTS appointed the RTC as receiver of Southwest Federal. As receiver, the RTC succeeded to all of the rights, titles, and privileges of Southwest Federal with respect to its assets, including the claims against Southwest's officers and directors. On or about the same day, the RTC as receiver of Southwest Federal entered into a contract of sale whereby it transferred certain of Southwest Federal's assets, including the claims asserted in the present case, to the RTC in its corporate capacity.

The RTC moves pursuant to Fed.R.Civ.P. 12(f)[4] to strike certain of the affirmative defenses[5] that defendants have alleged.[6] It also asks the court to limit the scope of discovery concerning the alleged negligence of pre-closure regulatory activities and post-closure regulatory management of Southwest's assets.

Pursuant to Rule 12(f), the court may strike "from any pleading any insufficient defense." Fed.R.Civ.P. 12(f). An affirmative defense is insufficient, within the meaning of Rule 12(f), if the defense cannot as a matter of law succeed under any circumstance. *FDIC v. Isham,* 782 F.Supp. 524, 530 (D.Colo.1992). Although motions made pursuant to Rule 12(f) are viewed with disfavor and are infrequently granted, *see FDIC v. Niblo,* 821 F.Supp. 441, 449 (N.D.Tex.1993) (Cummings, J.), the court may strike affirmative defenses in appropriate cases. *See, e.g., id.* (granting motion to strike certain affirmative defenses).

Rule 26(c)(4) permits the court to limit the scope of discovery.

## II

Before reaching the specific grounds of the RTC's motion, the court determines whether the Supreme Court's recent decision in *O'Melveny & Myers* alters in any material respect the Fifth Circuit's earlier opinion in *FDIC v. Mijalis,* 15 F.3d 1314 (5th Cir.1994), *aff'g in part, rev'g in part* 800 F.Supp. 397 (W.D.La.1992). The question whether *O'Melveny & Myers* has an effect on *Mijalis* must be addressed because *Mijalis* directly controls the resolution of certain of the issues presented by this motion. This court is obligated to follow a legally indistinguishable Fifth Circuit panel opinion unless the decision has been "overruled en banc or by the United States Supreme Court." *Campbell v.*

**3.** According to the RTC's complaint, Hearne, Miller, and Park also served as directors of Southwest.

**4.** In its motion, the RTC cites Rule 12(b)(6). *See* P.Mot. Strike at 2. In its brief, however, the RTC relies upon Rule 12(f). *See* P.Br. at 4–5 (addressing procedural standards for Rule 12(f) motions). The title of the motion also makes pellucid that the motion is made pursuant to Rule 12(f).

**5.** The RTC has withdrawn the portion of its motion that seeks to strike defendants' limitations defense. This defense is the subject of pending summary judgment motions and the RTC con-

ceded at oral argument that the issue would be better litigated in that context. *See* Tr.Oral Arg. at 44–45.

**6.** The Director Defendants have filed a joint answer that alleges their affirmative defenses. The Officer Defendants have filed four individual answers that present identical affirmative defenses. Another defendant, William F. Conger ("Conger"), although given until January 31, 1994 to plead to the RTC's complaint, *see* December 16, 1993 Order, has neither answered nor otherwise pleaded. Conger is alleged to have been an officer of a wholly-owned subsidiary of Southwest, and would therefore be classified as an Officer Defendant.

*Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1121 n. 8 (5th Cir.1992); *MCI Tel. Corp. v. United Showcase, Inc.*, 847 F.Supp. 510, 512 (N.D.Tex.1994).

Both *O'Melveny & Myers* and *Mijalis* were decided after the parties completed their briefing of the instant motion, but prior to oral argument. Defendants maintain that *O'Melveny & Myers* "absolutely overruled" the rationale of *Mijalis* and like cases. *See* Tr. Oral Arg. at 57. The RTC counters that *Mijalis* and similar opinions stand undisturbed. The court holds, for the reasons discussed below, that *O'Melveny & Myers* does not overrule *Mijalis* insofar as it is apposite to the RTC's motion to strike.[7]

### A

The starting point for analyzing this question is the *Mijalis* opinion and a Seventh Circuit decision, *FDIC v. Bierman*, 2 F.3d 1424 (7th Cir.1993), *aff'g FDIC v. Stanley*, 770 F.Supp. 1281 (N.D.Ind.1991), from which *Mijalis* draws some of its reasoning. *See Mijalis*, 15 F.3d at 1324 (agreeing with *Bierman's* "cogent analysis" of question whether the FDIC has post-closure duty to mitigate damages in suit against former officers and directors of failed financial institution).

In *Mijalis* the Fifth Circuit addressed *inter alia* whether the affirmative defense of failure to mitigate damages could be asserted against the FDIC "when it sues former directors and officers in its corporate capacity to recover losses sustained by an insolvent financial institution and covered by the national insurance fund." *Id.* The panel agreed with the Seventh Circuit's *Bierman* decision and held, "[f]or the reasons stated in that case," that the FDIC is not subject in such circumstances to the affirmative defense of failure to mitigate damages. *Id.* (citing *Bierman*, 2 F.3d at 1438–41). *Bierman* had

reasoned that an action by the FDIC in its corporate capacity against directors and officers who allegedly have breached their duties to the bank is an asset purchased by the FDIC. *Bierman*, 2 F.3d at 1439. The FDIC has a duty to manage such assets in order to replenish funds expended from the insurance fund that have been used to cover the losses that the directors and officers allegedly caused. *Id.* When the FDIC undertakes this task it must act in the public interest, replenish the insurance fund, and maintain confidence in the soundness of the national banking system. *Id.* "Congress has made it clear that the FDIC is to exercise its discretion in choosing a course of action in its efforts to replenish the fund." *Id.* When the FDIC acts to refill the fund, "it has no duty to attempt to mitigate the damages attributed to [the directors and officers] by seeking other, perhaps less sure, avenues of relief." *Id.* at 1439–40. Further, when the FDIC initiates a suit against such persons, it is performing a discretionary function. The discretionary function exception to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a), insulates the FDIC from affirmative defenses when it sues in its corporate capacity to recover from directors and officers. *Id.* at 1440–41.

The *Mijalis* panel also decided that, because the FDIC is not subject to the affirmative defense of mitigation of damages, the defendants were "not entitled to attack the causation element of the FDIC's case by showing that the FDIC's acts and omissions caused the damages it sought to recover from the defendants." *Mijalis*, 15 F.3d at 1327. The court therefore upheld the trial court's ruling that precluded the defendants from offering evidence "concerning the activities of the FDIC in its efforts to manage and collect on loans that were owed to the [failed

---

**7.** The court recognizes that divining the impact of *O'Melveny & Myers* upon issues like those in question may present a jurisprudential conundrum. *Cf. RTC v. Williams*, 1994 WL 477231, at *3–*4 (D.Kan. Aug. 4, 1994) (noting that "the *O'Melveny* Court did not address the issue of whether defenses based upon the post-closing activities of the RTC or other regulatory agency could be asserted as affirmative defenses," but holding "in light of *O'Melveny's* broad statements

that a regulatory agency stands in the shoes of the failed institution and is subject to the same state law defenses that would have been applicable to the institution or any other assignee," that court should "explore whether the defenses of estoppel and mitigation of damages may now be asserted against the RTC" and calling for further briefing). Nevertheless, having carefully considered the issue, the court must now decide this question.

bank] at the time it was closed." *Id.*[8] The panel also concluded that "[a]ll other avenues of proving that their gross negligence did not proximately cause the losses remained open to them." *Id.* at 1327–28.

In *O'Melveny & Myers* the Court addressed the question whether federal or state law governed the tort liability of attorneys who provided services to a defunct federally insured thrift in a suit brought by the FDIC as receiver of the institution. —— U.S. at ——, 114 S.Ct. at 2051. The precise issues were whether federal or California law dictated how the knowledge of corporate officers acting against the corporation's interest would be imputed to the corporation or to the FDIC when it sues as receiver. *Id.* at ——, 114 S.Ct. at 2052. The Court held that there is no federal general common law, and there is no basis to adopt a special federal common law rule divesting states of authority over the entire law of imputation. *Id.* at ——, 114 S.Ct. at 2053. Instead, California law governs. *Id.*

## B

■ The court concludes that neither the holding nor the reasoning of *O'Melveny & Myers* calls into question the rulings and rationale of *Mijalis,* at least insofar as *Mijalis* controls the court's decision in the present case.

The holding of *O'Melveny & Myers* addressed whether the FDIC, suing as receiver, is governed by state law when it brings an action to recover on the basis of state law claims for which the institution could have sued had it not failed. It has no precise application to the question whether the RTC, in its corporate capacity, can be subjected to state law defenses based upon its post-closure conduct.

The reasoning of *O'Melveny & Myers* likewise does not disturb the rationale of *Mijalis.* Unlike *Mijalis* and *Bierman,* both of which dealt in relevant part with the post-closure conduct of the FDIC suing in its corporate capacity, *O'Melveny & Myers* concerned the FDIC in its receivership capacity,

in which it stands in the shoes of the failed institution. In this context, the Supreme Court held that when the FDIC, as receiver of a federally-insured thrift, sues on the basis of causes of action created by state law, the law of the state—not federal common law—controls. —— U.S. at ——, 114 S.Ct. at 2053. State law is not preempted by federal law because (1) 12 U.S.C. § 1821(d)(2)(A)(i) is an explicit federal statutory provision that appears to indicate that the FDIC, as receiver, steps into the shoes of the failed thrift, and when the FDIC asserts state law claims of the institution that are potentially defeasible under state law, any defense good against the original party is good against the receiver; (2) the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 1989 U.S.C.C.A.N. (103 Stat.) 183 ("FIRREA"), is a comprehensive and detailed federal statute that specifically creates special federal rules of decision regarding claims by, and defenses against, the FDIC as receiver, thereby indicating that unless some provision in the extensive framework of FIRREA provides otherwise, § 1821(d)(2)(A)(i) "places the FDIC in the shoes of the insolvent S & L, to work out its claims under state law;" and (3) even if FIRREA does not apply, judicial creation of a special federal rule is unjustified when the rules of decision at issue "do not govern the primary conduct of the United States or any of its agents or contractors, but affect only the FDIC's rights and liabilities, as receiver, with respect to primary conduct on the part of private actors that has already occurred." —— U.S. at ——, 114 S.Ct. at 2054–55. *O'Melveny & Myers* does not affect the reasoning of *Mijalis* because the Fifth Circuit was addressing the FDIC's own conduct, not that which is attributable to it as receiver of a failed institution. Accordingly, the court holds that *Mijalis* is still binding precedent.

## C

The Fifth Circuit has thus far addressed *O'Melveny & Myers* in only one published case. *See FDIC v. Massingill,* 24 F.3d 768,

---

**8.** The FDIC conceded that "the defendants were free to contend that their gross negligence was not the proximate cause of the damages claimed," and could challenge the FDIC's evidence regarding its damages. *Mijalis,* 15 F.3d at 1327.

*reh'g denied*, 30 F.3d 601 (5th Cir.1994). In its original opinion, the *Massingill* panel addressed in relevant part whether the maker of a note could assert the affirmative defense of impairment of collateral. 24 F.3d at 779. This question could have turned on whether Texas or New Mexico law applied. *See id.* The panel avoided this choice-of-law issue by invoking federal common law to hold that the maker could not raise the defense. *Id.* at 779–80. The court upheld the district court's decision preventing the assertion of impairment of collateral. *Id.* at 780.

On rehearing the panel agreed, based upon the facts of the case, and in light of *O'Melveny & Myers*, that it should not create a substantive federal common law rule of decision with respect to defendant's ability to assert the defense of impairment of collateral. *Massingill*, 30 F.3d at 604 (on rehearing). The panel noted that, in light of *O'Melveny & Myers*, "there is a heavy presumption in favor of application of a rule of decision in accordance with [state] law as opposed to the creation of a federal rule of decision." *Id.* Quoting the Fourth Circuit's recent decision in *RTC v. Maplewood Investments*, 31 F.3d 1276, 1294 (4th Cir.1994) (holding on the basis of *O'Melveny & Myers* that case was not an extraordinary one that warranted creation of federal common law holder in due course rule for non-negotiable instrument), the *Massingill* panel held that the case was not sufficiently extraordinary to warrant judicial creation of a federal rule of decision. *Id.* The court withdrew its earlier reliance upon a federal common law rule, "in accordance with [its] understanding of *O'Melveny* and its impact upon the application of the

[*United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) ] test." *Id.*

The court cannot distinguish *Massingill* from *O'Melveny & Myers* on precisely the same basis as it has *Mijalis*. Unlike *O'Melveny & Myers*, where the FDIC sued as receiver of a failed thrift and stood in its shoes, in *Massingill* the FDIC brought suit in its corporate capacity [9] and the defendant attempted to urge the affirmative defense of impairment of collateral based upon the FDIC's own conduct after it repurchased the note in question. *See* 24 F.3d at 779 (noting that 12 U.S.C. § 1823(e) does not protect the FDIC against the consequences of its own conduct with respect to an asset after acquiring it). In *Massingill* the FDIC did not stand in the shoes of the failed bank. The rule of decision adopted by the *Massingill* panel governed the primary conduct of the FDIC rather than "primary conduct on the part of private actors that ha[d] already occurred," as had been the case in *O'Melveny & Myers*. *See* —— U.S. at ——, 114 S.Ct. at 2055.[10]

Although the *Massingill* opinion on rehearing requires this court to analyze carefully its earlier conclusion that *Mijalis* remains the law of the circuit insofar as relevant to the present case, the court nevertheless holds that *Mijalis* controls. The court thinks it unlikely that a panel would hold that a case like *Mijalis* is no longer binding on it without addressing the question with greater precision than did the *Massingill* panel opinion on rehearing. The court did identify and discuss the rationale and impact of the Su-

---

9. Although the *Massingill* opinion does not state explicitly the capacity in which the FDIC sues, thereby perhaps contributing to the official reporter's erroneous statement in its synopses to the original panel opinion, *see* 24 F.3d at 768, and to the opinion on rehearing, *see* 30 F.3d at 601, that the FDIC brought the action "as receiver of defunct New Mexico bank," it is reasonable to conclude that the FDIC was suing in its corporate capacity. First, the caption of the case indicates the FDIC "in its Corporate Capacity" is the plaintiff-appellee. Second, the opinion traces ownership of the notes in question from Moncor Bank, N.A. (formerly First City National Bank) ("Moncor"), to the FDIC as receiver for Moncor, to United Bank of Lea County, New

Mexico, to the FDIC by repurchase. *See* 24 F.3d at 772. There is no indication in the opinion that the FDIC was acting as receiver for a financial institution. In the court's experience, when the FDIC reacquires a note that a purchasing bank "did not wish to retain" and had the right to "return to the FDIC," *see id.*, the FDIC is acting in its corporate capacity.

10. *See also RTC v. Heiserman*, 856 F.Supp. 578, 580–81 (D.Colo.1994) (declining, in light of *O'Melveny & Myers*, to apply federal common law rule of joint and several liability that would effectively preempt Colorado proportionate liability statute, in suit brought by the RTC in its corporate capacity).

preme Court's intervening decision in *O'Melveny & Myers*, it acknowledged that the case imposed a heavy presumption in favor of application of a rule of decision in accordance with state law, and it recognized that the opinion had an impact upon the application of the *Kimbell Foods* test. But the panel ultimately rested its conclusion upon the facts before it, *see* 30 F.3d at 604 (agreeing "based upon the facts of this case" that substantive federal common law rule should not be created), and did not purport to hold generally that *O'Melveny & Myers* had superseded the rationale of *Mijalis*.

Moreover, the *Massingill* panel was bound by Fifth Circuit precedent to follow *Mijalis* as the earlier panel opinion unless *inter alia* an intervening Supreme Court decision overruled that precedent. *MCI*, 847 F.Supp. at 512 (citing *United States v. Gonzalez–Balderas*, 11 F.3d 1218, 1222 (5th Cir.1994); *Campbell*, 979 F.2d at 1121 n. 8). For the reasons the court has already set out, the court concludes that *O'Melveny & Myers* did not displace the relevant holdings and rationale of *Mijalis*. Therefore, even if *Massingill* can be read as reflecting one panel's intent to overrule *Mijalis* insofar as that opinion controls today's case—and this court does not think it should be read this way—*Massingill* must yield to *Mijalis* as a prior panel opinion.

## III

The court now turns to the specific grounds of the RTC's motion to strike.

### A

In related arguments, the RTC initially challenges certain affirmative defenses to the extent defendants "attempt to hold the RTC liable for the [Federal Home Loan Bank Board's ("FHLBB's")] prior regulatory conduct," *see* P.Br. at 6, and insofar as the defenses are based upon conduct of the FHLBB undertaken prior to the RTC's acquisition by assignment of Southwest's causes of action, *see id.* at 6–7. Although the RTC refers to an "attempt to hold the RTC liable," the motion is addressed to affirmative

defenses rather than counterclaims, and the court will treat the contention as a challenge to defendants' right to premise defenses upon the FHLBB's prior regulatory conduct. The court likewise will assume that the RTC's second assertion advances the same principal argument, predicated on somewhat different reasoning. The RTC's first contention is addressed to the Director Defendants' sixth, tenth, and eleventh defenses and the Officer Defendants' sixth, seventh, and eighteenth defenses. The second assertion is advanced to support striking the Director Defendants' sixth defense and the Officer Defendants' eighteenth defense.

The Director Defendants allege in their sixth defense, and the Officer Defendants in their eighteenth defense, the following affirmative defense:

> To the extent Southwest incurred any losses, those losses were solely or proximately caused in whole or in part by the intentional actions and/or negligence of the federal government, including the federal entities, agencies and instrumentalities who have purportedly assigned their claims to the RTC, or by persons or entities other than these Defendants. Moreover, such assignors and the RTC subsequently acted unreasonably and negligently in their supervision, management and liquidation of Southwest assets and failed to properly mitigate any damages.[11]

The Director Defendants allege as their tenth and eleventh defenses, and the Officer Defendants as their sixth and seventh defenses, that the RTC's claims are barred by estoppel, ratification, waiver, and laches.

■ The court agrees with the RTC that defendants cannot base affirmative defenses upon the conduct of the FHLBB. In *RTC v. Acton*, Civil Action No. 3:92–CV–0624–H, slip op. at 10 (July 6, 1993), *reconsideration granted in part on other grounds*, 844 F.Supp. 307 (N.D.Tex.) (Sanders, C.J.), *appeal docketed*, No. 94–10375 (5th Cir. Apr. 1994), Chief Judge Sanders held *inter alia* that pre-conservatorship conduct of federal banking regulators cannot be attacked by

---

11. The court sets out the text of the Director Defendants' sixth defense. The Officer Defen- dants' eighteenth defense varies slightly in punctuation and non-substantive word choices.

directors. He therefore granted summary judgment dismissing affirmative defenses that were based upon the pre-conservatorship conduct of such regulators. The court has located no contrary authority that persuades it to adopt a different rule.[12] Therefore, to the extent the Director Defendants, in their sixth, tenth, and eleventh defenses, and the Officer Defendants, in their sixth, seventh, and eighteenth defenses, urge affirmative defenses to liability based upon the conduct of the FHLBB, the court strikes the defenses pursuant to Rule 12(f).

Insofar as the Director Defendants' sixth defense and the Officer Directors' eighteenth defense are based upon causation arguments, however, the court declines to strike them in their entirety. In *Mijalis* the Fifth Circuit held that directors and officers are not entitled to attack the causation element by showing that the FDIC's acts and omissions caused the damages it seeks to recover, but all other avenues of proving that defendants' gross negligence did not proximately cause the losses remain available. *Mijalis,* 15 F.3d at 1327–28. Applied to the present case, *Mijalis* precludes defendants from defending the causation elements of the RTC's claims based upon the RTC's post-closure conduct; it does not prevent them, however, from demonstrating that the conduct of other entities such as the FHLBB caused Southwest to incur any losses for which the RTC sues. Accordingly, these "defenses"[13] are not stricken with respect to conduct of the FHLBB insofar as defendants intend to rely upon such conduct to support causation arguments.

**B**

■ The RTC also challenges the Director Defendants' sixth defense and the Officer Defendants' eighteenth defense to the extent they urge (1) failure to mitigate damages; (2)

that negligence or intentional conduct of federal banking regulators caused Southwest's losses; and (3) the defenses of contributory and/or comparative negligence of the RTC. The RTC contends that defendants may not interpose these affirmative defenses because (1) the RTC owed no duty to Southwest's directors and officers, and therefore cannot be subject to affirmative defenses of comparative and/or contributory negligence; (2) any pre-closure activity of the RTC is protected by the discretionary function exception to the FTCA; and (3) the RTC's statutory discretion to act in the best interest of the failed institution's estate negates defendants' mitigation defense.

Because *Mijalis* is binding on this court, the court need only follow that decision in striking the defense of failure to mitigate damages. *See Mijalis,* 15 F.3d at 1323–24. This defense is therefore stricken.

On the basis of *Acton,* discussed *supra* at § III(A), the court holds that defendants may not assert the defenses of contributory and/or comparative negligence of federal banking regulators. Relying on *Mijalis,* the court also rejects any such defenses based upon the conduct of the RTC. This question is not answered precisely by *Mijalis,* but the reasoning of the opinion supports the conclusion that these defenses are unavailable.

In *Mijalis* the panel concurred with the Seventh Circuit in *Bierman* that the FDIC is not subject to the affirmative defense of mitigation of damages. 15 F.3d at 1324. Before "agree[ing] with the Seventh Circuit's cogent analysis," the *Mijalis* court recognized that *Bierman* had exempted the FDIC from the affirmative defense of contributory negligence because to do so was "consonant with the purpose of the discretionary function exception to the FTCA." *Id.* (quoting *Bierman,* 2 F.3d at 1441).[14] Although *Mijalis*

---

**12.** For the reasons explained above, *see supra* at § II, the court holds that *O'Melveny & Myers* does not alter the holding of *Acton* in this respect.

**13.** The court agrees with Judge Cummings' conclusion in *Niblo,* 821 F.Supp. at 460, that assertions of "no proximate causation, sole proximate causation, and/or intervening causation are not affirmative defenses."

**14.** The court concludes that *O'Melveny & Myers* does not alter this holding in *Bierman. Bierman* relied upon criteria set forth in the Supreme Court's decision in *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), to hold that excepting the FDIC from the affirmative defense of contributory negligence is consonant with the purpose of the discretionary function exception to the FTCA. *Bierman,* 2 F.3d at 1440–41. *O'Melveny & Myers* did not overrule

did not decide the issue now before this court, *see id.* at 1321 (defendants based comparative negligence argument on conduct of other bank directors who had settled claims against them, not upon acts or omissions of the FDIC), it is a reasonable conclusion that the panel would also have applied *Bierman* to preclude the defense of contributory negligence based upon the FDIC's conduct had the case presented the question. Accordingly, the court agrees with the RTC that defendants may not urge the affirmative defenses of contributory and/or comparative negligence based upon the conduct of the RTC.

To the extent these defenses present causation arguments, however, the court declines to strike them in their entirety. As the court has explained, *see supra* at § III(A), so long as defendants do not rest such allegations on the post-closure conduct of the RTC, they remain unfettered in attempting to defeat the causation elements of the RTC's causes of action by relying upon the conduct of others.

### C

The RTC next urges that defendants cannot assert the affirmative defenses of waiver, ratification, estoppel, and laches based upon pre-closure regulatory activities of the FHLBB, Federal Home Loan Bank of Dallas ("FHLB–Dallas"), and/or the Federal Savings and Loan Insurance Corporation ("FSLIC").[15] The RTC reasons that because it is a separate entity from the other entities, their activities cannot serve as a predicate for interposing the defenses against the RTC. It also contends that laches cannot be raised against a federal agency and, on the basis of Texas law, that a laches defense is unavailable when an analogous statutory limitations period exists. Defendants oppose this aspect of the RTC's motion, contending, first, to the extent the RTC stands in South-

west's shoes, defendants may interpose affirmative defenses; and second, defendants may rely upon the conduct of the RTC and other agencies to prove these defenses.

■ The RTC does not quarrel with defendants' assertion that the RTC is subject to any affirmative defenses available against Southwest. It conceded at oral argument that all such defenses that could have been asserted against Southwest in response to a suit brought by Southwest against its former officers and directors may be alleged against the RTC in the present action. *See* Tr. Oral Arg. at 47–49. The court does not construe the RTC's motion to request that affirmative defenses of this type be stricken.

■ Defendants also maintain that they may rely upon the conduct of other agencies to assert these defenses against the RTC. The court disagrees. Defendants have not demonstrated as a matter of law that the pre-closure conduct of other federal entities can support defenses of waiver, ratification, and estoppel against the RTC. *See, e.g., RTC v. Scaletty,* 810 F.Supp. 1505, 1518–19 (D.Kan.1992) (striking these defenses). Accordingly, the court strikes these defenses to the extent they are based upon the pre-closure conduct of the FHLBB, FHLB–Dallas, or the FSLIC.

■ The court strikes defendants' laches defense on the narrower Texas law ground that because there is an applicable statute of limitations, the defense is unavailable as a matter of law. *See Niblo,* 821 F.Supp. at 451.

### D

■ The RTC moves to strike the Director Defendants' seventh defense and the Officer Defendants' nineteenth defense, in which they allege that Southwest's damages

*Gaubert.* The Supreme Court has instructed that if one of its precedents "has direct application in a case, yet appears to rest on reasons rejected in some other line of cases, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriquez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 1921–22, 104 L.Ed.2d 526 (1989). In this court's view, *Gaubert* is not

called into question by *O'Melveny & Myers,* at least insofar as *Bierman* relied upon *Gaubert* to reject the defense of contributory negligence.

**15.** The Director Defendants allege these as their tenth and eleventh defenses; the Officer Defendants raise these as their sixth and seventh defenses.

were solely or proximately caused "by intentional and/or negligent conduct of the federal government, misguided federal policy, the enactment of FIRREA, the confiscation of a major portion of Southwest's assets and by other unrelated or intervening causes." The RTC contends the defenses must be dismissed to the extent defendants rely upon a non-existent duty owed by the RTC to defendants. It also urges for various reasons that the grounds on which defendants rely in support of these defenses cannot constitute causes of the RTC's damages.

The court cannot resolve the RTC's second argument in the context of the present motion to strike. It is not apparent that defendants' causation arguments are all destined to fail as a matter of law. This aspect of the RTC's position is denied.

With respect to the first contention, the court reiterates its holding above, based on *Mijalis,* that defendants cannot maintain causation arguments on the basis of the RTC's conduct but that they retain other theoretical and evidentiary avenues on which to challenge causation. Therefore, the court grants in part and denies in part this portion of the motion to strike.

### E

■ The court now determines whether the Director Defendants' and Officer Defendants' respective fourteenth defenses, which the RTC labels as urging the right of setoff, should be stricken. Defendants contend they are simply positing as a defense the right to a reduction in any damage award for amounts received by the RTC or its alleged assignors.

Because the RTC's motion is premised on the assumption that this is a demand for setoff, and since it does not appear unequivocally that the defense can be characterized as such a demand (defendants seek to reduce their damages on a more general basis than is available in the case of a setoff), the court denies the motion to strike. At this juncture, defendants appear simply to urge that the

RTC should not benefit from a double recovery.[16]

### F

■ The RTC next contends that the Director Defendants' eighth defense and the Officer Defendants' seventeenth defense, based upon Executive Order No. 12778, are not viable because the order creates no defense. The court agrees, and these defenses are stricken. *See Scaletty,* 810 F.Supp. at 1519.

### G

■ The RTC challenges the Director Defendants' fifth defense and the Officer Defendants' sixteenth defense, in which they contend the RTC is not the proper assignee of the claims-in-suit because Texas law and public policy prohibit the bartering and sale of such claims. Defendants have not established any basis to succeed on this defense and it is stricken. *See id.* (rejecting defense based on Kansas rule against assignment of tort claims as inconsistent with federal law).

### H

The RTC moves to strike in part the Director Defendants' ninth defense and the Officer Directors' fourth defense, wherein defendants posit that they "acted in conformity with all applicable standards and reasonably relied upon information provided to them by appropriate persons." The RTC seeks to strike this defense "to the extent Defendants assert reliance upon any conduct or lack of conduct by any federal regulators or examiners." P.Br. at 23.

The court cannot now determine the precise contours of this defense. To the extent it asserts defensive positions that have been rejected by the court in other portions of this opinion, this defense similarly cannot stand. It is unclear, however, whether this defense is anything more than an assertion that defendants were not negligent or grossly negligent and did not breach a fiduciary duty, or that Southwest's damages were not caused by their conduct. Accordingly, the court de-

---

**16.** The court has no occasion to decide whether the RTC would receive a double recovery if, as defendants allege in this defense, an assignor of the RTC obtained a recovery.

nies this ground of the motion to strike, but does so without prejudice to the RTC's moving for summary judgment as to this defense.

I

The RTC asserts that it has standing to bring the instant action and therefore moves to strike the Director Defendants' and Officer Defendants' fifteenth defense. The court cannot decide the validity of this defense in the context of a Rule 12(f) motion because the pertinent factual allegations of the RTC's complaint are disputed. This ground of the motion to strike is therefore denied.

IV

The RTC also moves the court to limit discovery so that it will not be conducted as to defenses that have been stricken. In particular, the RTC urges the court "to limit the scope of discovery regarding the alleged negligence of the pre-closure regulatory activities and the post-closure regulatory management of the assets of the failed institution." P.Br. at 25. The court grants the motion to the extent the court's rulings today narrow the scope of discovery as defined by Fed.R.Civ.P. 26(b)(1). The motion is otherwise denied.

\*      \*      \*

The RTC's motion to strike certain affirmative defenses and to limit discovery is granted in part and denied in part.

**SO ORDERED.**