The **FEDERAL DEPOSIT INSURANCE CORPORATION**, in its Separate Corporate Capacity and as Receiver of Ingram State Bank, Plaintiff,

v.

Charles **SCHREINER**, III, et al., Defendants.

Civ. No. SA–93–CA–674.

United States District Court,
W.D. Texas,
San Antonio Division.

Feb. 16, 1995.

Steven K. DeWolf, Ronquillo & DeWolf, L.L.P., Dallas, TX, David Mace Roberts, Ronquillo & DeWolf, L.L.P., Dallas, TX, for F.D.I.C.

William H. Oliver, Drought & Pipkin, L.L.P., San Antonio, TX, for Charles Schreiner, III.

George H. Spencer, Clemens, Spencer, Welmaker & Finck, San Antonio, TX, for Raymond F. Barker.

Lavern D. Harris, Harris & Harris, P.C., Kerrville, TX, for H. Dale Priour, Jack Clarke, Jr.

Frederick C. Shannon, Jr., Mitchell L. Weidenbach, Shannon, Weidenbach & Estee, Inc., San Antonio, TX, for Jasper Moore, Jr.

Keith E. Kaiser, Cox & Smith Inc., San Antonio, TX, Steven H. Thomas, Law Offices of Steven H. Thomas, Dallas, TX, for Jane Flato Smith.

M. Scott Stehling, Kerrville, TX, for Charles H. Johnston.

## ORDER

SUTTLE, Senior District Judge.

The matter before the Court is the Motion for Partial Summary Judgment filed by the Federal Deposit Insurance Corporation ("FDIC") on December 16, 1994. The Court has reviewed the motion as well as the responses filed by Jasper Moore, Jr. and Jane Flato Smith on December 22, 1994 and January 4, 1995, respectively.[1] Having done so, it rules as follows:

## I. *BACKGROUND*

The FDIC brings this suit against the former directors and officers[2] of Chas. Schreiner Bank ("CSB"), a state-chartered, federally insured bank situated in Kerrville, Texas, and Ingram State Bank ("ISB"), a state-chartered, federally-insured bank situated in Ingram, Texas.[3] In its Sixth Amended Complaint, the FDIC asserts claims against the defendants for gross negligence and breach of fiduciary duty.[4] The allegations are founded on the actions and omissions of the defendants in approving, renewing, extending and consolidating loans made by CSB to Dale Priour, Ranchmen's Wool and Mohair Export, Inc., Ranchmen's Wool and Mohair, Inc., Priour Varga Wool and Mohair, L.D. Brinkman, LDB Corporation, and Dale Elmore and the participation of ISB in those loans, during the years 1980 through 1989. The FDIC also seeks to hold the defendants liable for the upstreaming of

1. Moore filed a joinder in Smith's response on January 5, 1995.

2. Defendant Charles H. Johnston served as a director of CSB from January 1, 1970 through April 19, 1990. He also served on the CSB executive committee from 1980 through 1990. He was a director at ISB from March 9, 1978 through September 14, 1990.

Charles Schreiner, III served as a director at CSB from 1958 until May 25, 1988. He then served as an advisory director until April 19, 1990. Schreiner also served on CSB's executive committee from 1980 through 1988. He also served as a director at ISB from March 9, 1978 through May 25, 1988. He then served as an advisory director until May 25, 1988.

H. Dale Priour served as a director of CSB from May 6, 1978 through May 25, 1988. Priour also served as a director at ISB from March 9, 1978 through May 25, 1988. He then served as an advisory director until November 15, 1989.

Jane Flato Smith served as a director of CSB from October 15, 1970 through April 19, 1990. She also served on the executive committee of CSB from 1980 through 1990. Mrs. Smith also served as a director of ISB from March 9, 1978 through September 14, 1990.

Jasper Moore, Jr. served as a director at CSB from July 19, 1962 through February 21, 1990.

He also served as a director at ISB from March 9, 1978 through February 21, 1990.

Raymond F. Barker served as a director, chairman of the board and president of CSB from July 8, 1971 through September 27, 1989. Barker also served on the CSB executive committee and CSB loan committee from 1980 through 1989. He also served as a director and chairman of the board of ISB from March 9, 1978 through November 1, 1989. Barker also served on the ISB loan committee from 1978 through 1989.

Jack Clarke, Jr., who has been dismissed as a defendant pursuant to a settlement agreement with the FDIC, served as a director at CSB from February 14, 1985 through April 19, 1990. He also served on the loan committee at ISB from July 12, 1989 through September 14, 1990. Clarke also served as a director at ISB from February 10, 1983 through September 14, 1990.

3. The FDIC appears in its corporate capacity as the assignee of the statutory receiver of CSB and in its receivership capacity as the assignee of the statutory receiver of ISB. *See* Plaintiff's Sixth Amended Complaint, page 5.

4. The Court earlier dismissed the FDIC's claims of negligence and negligence *per se* in its order of March 24, 1994.

dividends from CSB to its holding company, Schreiner Bancshares, Inc., in 1988.

On September 23, 1994, the Court entered three orders, each of which granted in part and denied in part the FDIC's three motions to strike various affirmative defenses asserted by Dale Priour, Jack Clarke, Jr., Charles H. Johnston, Jasper Moore, Jane Flato Smith, Charles Schreiner, III and Raymond F. Barker. The FDIC now seeks summary judgment on the remaining twenty two affirmative defenses.

■ Defendants contend that the instant motion is nothing more than an invitation by the FDIC for the Court to reconsider its previous orders on its motions to strike in the guise of a motion for summary judgment and should be denied as such. While the Court recognizes the similarity between the instant motion and the motions to strike, it does not believe that is grounds for denying the motion. Furthermore, to the extent this order might be construed as a reconsideration of the previous orders on the motions to strike, there can be no doubt but that the Court has the authority for doing so under Rule 54, Federal Rules of Civil Procedure.[5] *See also Retired Chicago Police Ass'n v. City of Chicago,* 141 F.R.D. 477 (N.D.Ill.1992) (district court's determination that police association had standing as representative of its members to challenge pension settlement could be revised or reconsidered after further development of the record, where court had not yet issued final order adjudicating claims of all parties nor certified prior ruling as final and appealable). Moreover, such a reconsideration is appropriate because Court, when passing on the motions to strike, did not then have the benefit of the post-*O'Mel-*

*veny* decisions of other district courts which have guided and shaped its reasoning and decision in resolving the issues raised by the FDIC's instant motion. Therefore, the defendant's motion to deny the FDIC's motion on this ground is DENIED.

■ Defendant Moore has also moved to strike the FDIC's motion on the ground that it has filed a brief in excess of 10 pages without first obtaining leave of the Court in violation of Local Court Rule CV–7(c). While it is true that the FDIC failed to first obtain permission to file a brief in excess of the ten page limit, the Court has discretion under Local Court Rule CV–1(e) to waive the requirement. In light of the complexity of the issues involved and the lack of any harm befalling Moore from allowing the FDIC to exceed the ten page limit, the Court hereby waives the requirement. Having done so, Moore's motion to strike is DENIED.

## II. *SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Federal Rules of Civil Procedure, Rule 56(c); *Lavespere v. Niagara Machine & Tool Works,* 910 F.2d 167, 177 (5th Cir.1990), *cert. denied,* —— U.S. ——, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993). To determine whether there are genuine fact issues, the Court must first consult the applicable law to ascertain what issues are material. *Id.* at 178. Next, it reviews the evidence on those issues, viewing the facts and inferences in the light most favorable to the non-moving party. *Id.*[6]

**5.** Rule 54 provides in pertinent part as follows: **(b) Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or

the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

**6.** As the defendants note, the supporting brief filed by the FDIC with the instant motion is, except for a few insignificant changes in numbering and references to the standards for summary judgment, rather than a motion to strike, almost a verbatim copy of the one it filed in conjunction with its motion to strike.

### III. *AFFIRMATIVE DEFENSES AT ISSUE*

The affirmatives defenses on which the FDIC seeks partial summary judgment are:

1. The FDIC failed to mitigate damages, alleged by Moore, Johnston, Priour, and Smith as their third, fifth, and thirteenth affirmative defense, respectively.

2. The FDIC's damages resulted from independent intervening causes for which the defendants are not liable, alleged by Moore and Johnston as their fourth affirmative defense.

3. The FDIC's damages were proximately caused by the fault, negligence, or other acts or omissions of persons other than the defendants, and the FDIC's right of recovery should be reduced or eliminated to the extent of such fault, negligence, act or omission of persons other than the defendants, the seventh affirmative defenses alleged by Moore and Johnston.

4. The FDIC's damages were caused by the FDIC, its predecessors, its employees, and/or its borrowers, the ninth affirmative defense alleged by Moore and Johnston.

5. Plaintiff's claims are barred by unclean hands and/or release, the tenth affirmative defense asserted by Moore and Johnston.

6. The FDIC has waived its right to file and prosecute the instant complaint, the fifteenth affirmative defense alleged by Moore and Johnston.

7. The shareholders, depositors, creditors and/or other persons with any interest in Ingram State Bank ("ISB") or Charles Schreiner Bank ("CSB") have waived any right made the subject of the complaint, the sixteenth affirmative defense asserted by Moore and Johnston.

8. The FDIC is estopped from filing and prosecuting the instant complaint, the seventeenth affirmative defense alleged by Moore and Johnston.

9. The shareholders, depositors, creditors and/or other persons with any interest in ISB or CSB are estopped from filing and prosecuting the instant complaint, the eighteenth affirmative defense asserted by Moore and Johnston.

10. Economic circumstances and other factors beyond the control of the defendants are the sole cause of the alleged damages at ISB or CSB, the nineteenth affirmative defense raised by Moore and Johnston.

11. The shareholders, depositors, creditors and/or other persons with any interest in ISB failed to mitigate the losses and/or damages claimed in the complaint, the twenty-first affirmative defense asserted by Moore and Johnston.

12. Intervening acts, including the decline of the economy, caused, in whole or in part, the alleged injuries to the FDIC, and the loans failed because of the faltering of the local economy amid a national recession, the twenty-fourth affirmative defense raised by Moore and Johnston.

13. The FDIC's claims are barred by Texas Business Corporation Act Article 2.41(D), because defendants' actions were taken in good faith reliance on the advice of others, and conformed with custom and usage in the industry, the tenth affirmative defense raised by Smith.

14. The FDIC's claims are barred, in whole or in part, under the doctrine of comparative responsibility, because Plaintiff's damages are the result of its own negligence or the negligence of others. Alternatively, FDIC's damages are the result of economic conditions over which defendants had no control, the eleventh affirmative defense raised by Smith.

15. The FDIC abused its discretion in carrying out its duties under 12 U.S.C. § 1821(d)(13)(E), the twelfth affirmative defense raised by Smith.

16. The FDIC has released its claims, in whole or in part, the fourteenth affirmative defense raised by Smith.

17. The FDIC has waived its claims, in whole or in part, the fifteenth affirmative defense raised by Smith.

18. The FDIC is estopped to assert its claims, in whole or in part, the sixteenth affirmative raised by Smith.

19. The FDIC's claims are barred, in whole or in part, by accord and satisfaction, the seventeenth affirmative defense raised by Smith.

20. The FDIC's claims are barred, in whole or in part, by res judicata, the eighteenth affirmative defense raised by Smith.

21. The FDIC's claims are barred, in whole or in part, by payment. Alternatively, defendants are entitled to a credit for all amounts received by FDIC from others in connection with its alleged claims, the nineteenth affirmative defense raised by Smith.

22. The FDIC's claims are barred, in whole or in part, by the doctrine of ratification, the twentieth affirmative defense raised by Smith.

### IV. *ARGUMENTS*

Three arguments underlay the FDIC'S motion. The first argument invokes what is commonly denominated as the "no-duty" argument. The thrust of this argument is that any affirmative defense calling into question the pre- or post-bank closing actions of the FDIC are insufficient as a matter of law because the FDIC owes no duty to the officers and directors of a failed bank, either in its pre-failure regulation of a bank or in its post-failure liquidation of the same. The FDIC next argues that any actions taken by it, whether prior or subsequent to the failure of a bank, are protected under 12 U.S.C. § 1821(d) [7] and the discretionary function exception to the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 2680(a)(1965). The final and, by far, most intriguing argument is that, despite the recent decision of the Su-

preme Court in *O'Melveny & Meyers v. FDIC,* —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), the Fifth Circuit's earlier decision in *FDIC v. Mijalis,* 15 F.3d 1314, 1327–28 (5th Cir.1994) remains controlling precedent and precludes any affirmative defense questioning the FDIC's actions. In response to these arguments, the Defendants counter that neither *Mijalis* nor the "no-duty" rule survive *O'Melveny* and therefore their affirmative defenses remain viable. For reasons to become apparent *infra,* the Court confines its discussion to the FDIC's first and last arguments.

### V. *ANALYSIS*

■ As noted, the FDIC is of the opinion that the Fifth Circuit's holding in *Mijalis,*[8] although pre-dating *O'Melveny,* survives *O'Melveny* and applies to bar any affirmative defense questioning its pre- or post-bank closing actions. As support for its argument, the FDIC cites the Court to *RTC v. Sands,* 863 F.Supp. 365 (N.D.Tex.1994) and *RTC v. Bright,* 157 F.R.D. 397 (N.D.Tex.1994), in each which case the district court ruled, as the FDIC urges this Court to do here, that *Mijalis,* despite *O'Melveny,* remains binding precedent and accordingly precludes defendant directors and officers from asserting the affirmative defenses of failure to mitigate and contributory negligence against the FDIC.

1. *O'Melveny* and the "No–Duty" Rule.

In *O'Melveny,* the FDIC, as receiver of a failed savings and loan, asserted state-law claims of professional negligence and breach of fiduciary duty against a law firm which had worked on real estate deals involving the S & L. O'Melveny moved for summary judgment, arguing, among other things, that

---

7. Section 1821(d) sets forth the powers and duties of the FDIC as conservator or receiver.

8. *Mijalis* holds that the FDIC is not subject to the affirmative defense of failure to mitigate damages when it sues former directors and officers in its corporate capacity to recover losses sustained by an insolvent financial institution and covered by the national insurance fund. 15 F.3d at 1324. Related to this is the further holding that defendant officers and directors in a negligence action

brought by the FDIC in its corporate capacity can attack the causation element of the FDIC's case by attempting to show that their gross negligence was not the proximate cause of damages claimed, but cannot attempt to show that the FDIC's own post-closing acts and omissions were the proximate cause of its damages, because, under the "no-duty" rule, the FDIC is not subject to the affirmative defense of failure to mitigate damages. *Id.* at 1327.

under California law, the S & L's knowledge of the fraudulent conduct of its officers must be imputed to the S & L, and thence to the FDIC, which, as receiver, stood in the shoes of the thrift. Therefore, O'Melveny argued, the FDIC was estopped from pursuing its tort claims. The district court granted the motion. The Ninth Circuit reversed, holding that federal common law, not state law, controlled the question whether knowledge by the officers acting contrary to the interests of the S & L would be imputed to the FDIC as receiver, including whether such knowledge could provide the basis for the affirmative defense of estoppel against the FDIC. *See FDIC v. O'Melveny & Myers*, 969 F.2d 744, 751 (9th Cir.1992) ("It is by now clear beyond doubt that federal, not state, law governs the application of defenses against FDIC").

The Supreme Court phrased the issue before it as "whether, in a suit by the Federal Deposit Insurance Corporation as receiver of a federally insured bank, it is a federal law or rather a state-law rule of decision that governs the tort liability of attorneys who provide services to the bank." —— U.S. at ——, 114 S.Ct. at 2051. Because the receivership in that case started before the enactment of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") and it was therefore unclear whether FIRREA applied, Justice Scalia, writing for a unanimous court, separated his analysis into two parts. The first addressed the issue in the context of a post-FIRREA receivership where FIRREA applied. *Id.* at ——, 114 S.Ct. at 2054. The second determined whether, if FIRREA did not apply, it would be appropriate to utilize a federal common law rule of decision. *Id.* at —— – ——, 114 S.Ct. at 2055–2056.

With regard to the first situation, the FDIC argued, as it has here, that 12 U.S.C. § 1821(d)(2)(A)(i), pursuant to which it was bringing suit, was a nonexclusive grant of rights to the receiver that could be supplemented by federal common law designed to advance the important federal policies underlying FIRREA. The *O'Melveny* Court soundly rejected that argument, noting that FIRREA contained provisions which specifically create special federal rules of decision

regarding claims by, and defenses against, the FDIC as receiver. *Id.* at ——, 114 S.Ct. at 2054. In light of such provisions, the Court found it "hard to avoid the conclusion that § 1821(d)(2)(A)(i) places the FDIC in the shoes of the insolvent S & L, to work out its claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise." *Id.* Therefore, the creation of additional federal common-law exceptions would not serve to supplement this scheme, but instead would act to alter it. *Id.*

2. Distinguishing *O'Melveny* from *Mijalis*.

In *Sands*, the RTC brought suit against the defendant directors in its corporate capacity.[9] Nevertheless, the defendants maintained, as do defendants here, that *O'Melveny* overruled the rationale of *Mijalis* and permitted them to assert a plethora of affirmative defenses against the RTC. The RTC responded that *O'Melveny* was confined to suits in which the FDIC brought suit in its capacity as *receiver* of a failed institution and therefore was inapplicable to cases where the RTC was bringing suit in its *corporate* capacity. Therefore, *Mijalis* and similar opinions were left undisturbed by *O'Melveny* and provided the basis for striking the affirmative defenses.

After reviewing the holdings in both *Mijalis* and *O'Melveny*, the district court concluded that "neither the holding nor the reasoning of *O'Melveny & Myers* calls into question the rulings and rationale of *Mijalis*," at least insofar as *Mijalis* controlled its decision. In explaining its reasons for this conclusion, the court observed:

> The holding of *O'Melveny & Myers* addressed whether the FDIC, suing as receiver, is governed by state law when it brings an action to recover on the basis of state law claims for which the institution could have sued had it not failed. It has no precise application to the question whether the RTC, in its corporate capacity, can be subjected to state law defenses based upon its post-closure conduct.

9. *See RTC v. Sands*, 863 F.Supp. at 367.

The reasoning of *O'Melveny & Myers* likewise does not disturb the rationale of *Mijalis*. Unlike *Mijalis* and [*Federal Deposit Insurance Corporation v.*] *Bierman*, [2 F.3d 1424 (7th Cir.1993)], both of which dealt in relevant part with the post-closure conduct of the FDIC suing in its corporate capacity, *O'Melveny & Myers* concerned the FDIC in its receivership capacity, in which it stands in the shoes of the failed institution.... *O'Melveny & Myers* does not affect the reasoning of *Mijalis* because the Fifth Circuit was addressing the FDIC's own conduct, not that which is attributable to it as receiver of a failed institution.

*Sands,* 863 F.Supp. at 371. Accordingly, it struck (1) any affirmative defense based upon the pre-receivership conduct of the Federal Home Loan Bank Board ("FHLBB") [10], (2) the affirmative defense of failure to mitigate damages, and (3) the affirmative defense of contributory negligence and/or comparative negligence to the extent these defenses were based either on the RTC's own conduct or the conduct of federal banking regulators. 863 F.Supp. at 372–373. It also struck the affirmative defenses of waiver, ratification and estoppel to the extent they were based upon the pre-closure conduct of the FHLBB and other agencies than the RTC. 863 F.Supp. at 373–374.

In *Bright,* the defendants appealed a magistrate judge's order denying their motion to compel production of documents which they contended were necessary to prove their affirmative defenses of contributory negligence and failure to mitigate damages. Judge Fitzwater affirmed in part and denied in part the magistrate judge's order denying the motion, explaining:

> On the basis of the court's opinion in *RTC v. Sands,* 863 F.Supp. 365 (N.D.Tex. 1994) the court rejects defendants' contention that they may obtain the discovery in question in order to prove the affirmative defenses of contributory negligence and mitigation of damages. The court disagrees with the defendants' reading of *O'Melveny & Myers v. FDIC,* — U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), and holds on the basis of *FDIC v. Mijalis,* 15 F.3d 1314 (5th Cir.1994), *aff'g in part, rev'g in part* 800 F.Supp. 397 (W.D.La.1992), that neither affirmative defense is available to the extent predicated in the instant case upon the post-conservatorship conduct of the RTC.

157 F.R.D. at 400.[11]

This Court agrees with the holding and underlying rationale of *Sands.* As did the court there, this Court reads the holding in *O'Melveny* as being limited in application only to cases in which the FDIC brings suit as *receiver* for a failed institution. That reading its holding so is proper is borne out by the fact that the opening sentence of the opinion frames the issue as being "whether, *in a suit by the Federal Deposit Insurance Corporation as receiver of a federally insured bank,* it is a federal-law or rather a state-law rule of decision that governs the tort liability of attorneys who provided services to the bank." — U.S. at ——, 114 S.Ct. at 2051 (emphasis added). The opinion then proceeds to analyze the issue within that narrow factual context and concludes:

> Section 1821(d)(2)(A)(i), which is part of a Title captioned "*Powers and duties of [the FDIC] as ... receiver,*" states that "the [FDIC] shall ... by operation of law, succeed to—all rights, titles, powers, and privileges of the insured depository institution...." 12 U.S.C. § 1821(d)(2)(A)(i) (1988 ed., Supp. IV). This language appears to indicate that the FDIC *as receiver* "steps into the shoes of the failed S & L,

---

10. Although finding that *Mijalis* precluded the defendants from attacking the causation elements of the RTC's claims based upon the RTC's post-closure conduct, the court found it did not prevent them from demonstrating that the conduct of other entities such as the FHLBB caused the losses for which the RTC sued. 863 F.Supp. at 373.

11. Although affirming the magistrate judge's ruling insofar as he held that the documents were not discoverable insofar as they related to the affirmative defenses of contributory negligence and failure to mitigate damages, J. Fitzwater reversed the magistrate judge's order as to three of the four documents, finding that they were relevant to the defendant's challenge to the amount of the RTC's alleged damages. 157 F.R.D. at 401.

*cf. Coit Independence Joint Venture v. FSLIC,* 489 U.S. 561, 585, 109 S.Ct. 1361, 1374, 103 L.Ed.2d 602 (1989), obtaining the rights "of the insured depository institution" that existed *prior to receivership.* Thereafter in litigation by the FDIC asserting the claims of the S & L ... " 'any defense good against the original party is good against *the receiver.*' "

*Id.* at ——, 114 S.Ct. at 2054 (emphasis added) (citations omitted). Thus, this Court agrees with Judge Fitzwater that neither the holding nor the rationale of *Mijalis* has been supplanted or diminished by *O'Melveny* and therefore, as binding Fifth Circuit law, dictates the ruling of this Court as to any affirmative defenses asserted against the FDIC in its corporate capacity.

Accordingly, it is ORDERED that the affirmative defenses Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, and 22, to the extent that they are asserted against the FDIC in its corporate capacity for actions taken by it or other regulatory agencies, be DISMISSED.

### 3. The FDIC as Receiver.

#### a. Application of *O'Melveny.*

■ Having resolved the issue of what affirmative defenses remain viable against the FDIC in its corporate capacity in light of *O'Melveny,* the Court is left to make the same determination with respect to the FDIC in its capacity as receiver. Both the receivership of CSB and ISB began after the enactment of FIRREA. Therefore, both are governed by FIRREA and, consequently, only the first part of *O'Melveny* is germane to the discussion.

The FDIC brought its suit in *O'Melveny,* as it has here, pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), which provides that the FDIC as receiver shall "by operation of law, succeed to—all rights, titles, powers, and privileges of the insured depository institution." The *O'Melveny* Court rejected the FDIC's argument that the statute was a nonexclusive grant of rights to the receiver

which could be supplemented by federal common law, of which the "no-duty" rule was a creation, to further the important federal policies underlying FIRREA. Noting that FIRREA contains several special federal rules of decisions relating to suits by federal receivers, the Court held that "[t]o create additional 'federal common-law' exceptions is not to 'supplement' this scheme, but to alter it." *O'Melveny,* —— U.S. at ——, 114 S.Ct. at 2054. The complex Congressional scheme codified in FIRREA is to be respected; "matters left unaddressed in such a scheme are presumably left subject to the disposition provided by state law." *Id.* "It is hard to avoid the conclusion that § 1821(d)(2)(A)(i) places the FDIC in the shoes of the insolvent S & L, to work out its claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise." *Id.*

Several courts have distinguished their cases from *O'Melveny* on the ground that *O'Melveny* is limited to defenses arising from the pre-receivership conduct of private individuals.[12] They have based this reading on the following sentence from *O'Melveny:*

> The rules of decision at issue here do not govern the primary conduct of the United States or any of its agents or contractors, but affect only the FDIC's rights and liabilities, as receiver, with respect to primary conduct on the part of private actors that has already occurred.

—— U.S. at ——, 114 S.Ct. at 2055.

As noted by the district court in *RTC v. Liebert,* 871 F.Supp. 370 (C.D.Cal.1994), however, the district courts' reliance on this sentence to support their reading is misplaced.

> As previously noted ... there are two parts to *O'Melveny. This sentence comes from the second part, in which the Court analyzes whether a federal rule of decision would be appropriate in the absence of FIRREA.* The sentence is one of the bases for the Court's rejection of federal common law in the absence of FIRREA. If there were no FIRREA, this Court's task would be to determine whether federal

---

**12.** *See, e.g., RTC v. Edie,* No. Civ. 94–772, 1994 WL 744672 (D.N.J. October 4, 1994); *RTC v. Sands, supra; RTC v. Bright, supra; Kansas Pub.* *Emp. Retirement Sys. v. Reimer & Koger Assoc., Inc.,* No 92–0922–CV–W–9 (D.Kan. September 20, 1994).

policy conflicted with the use of state-law affirmative defenses. In that situation, the fact the RTC's conduct is at issue might be a reason to apply a federal rule. The federal policy interests would be even stronger in this case than they were in *O'Melveny.* But that is not the situation. FIRREA exists.

*RTC v. Liebert,* 871 F.Supp. at 372 (emphasis added).

This Court agrees with the *Liebert* court. Any reliance on the quoted sentence from the second part of *O'Melveny,* which analyzed the application of federal common law in the absence of FIRREA, to construe the first part of *O'Melveny,* which analyzed the application of federal common law in post-FIRREA suits, is wholly misplaced. The analysis undertaken by the Court in each of the two parts of *O'Melveny* is germane only to that particular part and is distinctly delimited from the other part by the enactment date of FIRREA, which is the line of division drawn by the *O'Melveny* Court. In short, that written in the first part is inapposite to that written in the second part, and vice versa. Therefore, this Court will follow the lead of *Liebert* and decline to distinguish *O'Melveny* via this flawed expedient.

Even though it has refused to distinguish *O'Melveny* from the instant case on the basis of the sentence contained in the second part of that opinion, this Court nevertheless believes that the first part, in and of itself, provides a basis on which to do so.

As previously noted, the *O'Melveny* Court concludes in the first part that § 1821(d)(2)(A)(i) "places the FDIC in the shoes of the insolvent S & L, to work out its claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise." —— U.S. at ——, 114 S.Ct. at 2054. In the paragraph immediately preceding this statement, however, the Court states:

> This language [§ 1821(d)(2)(A)(i) ] appears to indicate that
> the FDIC as receiver "steps into the shoes" of the failed S & L, *cf. Coit Independence Joint Venture v. FSLIC,* 489 U.S. 561, 585, 109 S.Ct. 1361, 1374, 103 L.Ed.2d 602 (1989), obtaining the rights "of the insured depository institution" *that existed prior to receivership.* Thereafter, in litigation by the FDIC asserting the claims of the S & L ... " 'any defense good against the original party is good against the receiver.'"

*Id.* (citations omitted) (emphasis added). This emphasized language means, in this Court's view, that the FDIC, when it brings suit as receiver of a failed bank, takes it subject only to those affirmative defenses that would have been available to the defendants against the bank *if the bank had brought suit.* In other words, the defendants are allowed to assert those affirmative defenses which challenge actions taken by the bank or other persons *prior to the bank closing and being placed into receivership.* Put conversely, the defendants are precluded from asserting any affirmative defenses which question the post-receivership actions of the FDIC. This reading makes sense for two reasons.

First, freezing the rights and liabilities of the parties in place as they stood at the time immediately prior to the bank failing and being placed into receivership reflects accurately the temporal and factual parameters of the lawsuit if it had been brought by the bank. The only time the bank can institute suit against the officers and directors is prior to the bank being closed and placed into the hands of the FDIC as receiver. Consequently, any lawsuit instituted by the bank must necessarily predate any action being taken by the FDIC as receiver. Given this, it logically follows that the defendant directors and officers in a lawsuit brought against them by the bank could not assert affirmative defenses complaining of actions taken by the FDIC as receiver. Simply put, it would be a factual impossibility.

■ Second, any affirmative defenses based on the post-receivership actions of the FDIC in managing and collecting on the loans due and owing to the banks at their closing are not true affirmative defenses. Such defenses do not attack the causation element of the FDIC's claims. Rather, they seek to reduce the amount of damages recoverable by the FDIC on the grounds that the FDIC failed somehow to minimize its losses.

As such, these arguments sound more in the nature of claims for reductions than affirmative defenses. The following passage from the *Mijalis* opinion perhaps best expresses the reason for striking any affirmative defenses challenging the post-closing actions of the FDIC.

> Because the FDIC is not subject to the affirmative defense of mitigation of damages, the defendants were also not entitled to attack the causation element of the FDIC's case by showing that the FDIC's acts and omissions caused the damages it sought to recover from the defendants. All other avenues of proving that their gross negligence did not proximately cause the losses remained opened to them.

15 F.3d at 1327–1328.

■ With regard to the "other avenues" available to the defendants, the *Mijalis* court noted that the defendants had been allowed to argue that their gross negligence was not the proximate cause of the damages claimed, and in fact introduced evidence to show that changes in the tax laws, declines in collateral values, and the general deterioration of the economy were intervening causes of the damages. The defendants also were allowed to question the FDIC's evidence regarding the salvage value of unliquidated collateral and thereby attack the damages figure recommended by the FDIC. *Id.* Those same avenues will be open to the defendants here to attack the FDIC's claims and damages calculations.

#### b. The Discretionary Function Exception.

■ In light of its reading of *O'Melveny,* the Court believes that there is no need to address the FDIC's argument that its actions as receiver are shielded from scrutiny by the defendants under the discretionary function exception of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a). However, if the Court were to reach the question, it would reject the FDIC's argument.

In *Gaubert [v. United States,* 885 F.2d 1284 (5th Cir.1989)], the shareholder of a failed savings and loan brought suit against the United States under FTCA, alleging the Federal Home Loan Bank Board ("FHLBB") had been negligent in the supervision of the S & L's directors and officers and that federal regulators had been negligent in their involvement in the day-to-day operations of the S & L. The Supreme Court, in reversing the decision of the Fifth Circuit, held that the discretionary function exception of the FTCA reached decisions made by the federal regulators at the operational or management level of the S & L, as well as the regulators' supervision of the S & L's day-to-day operations.

■ *Gaubert* is factually distinct from the case at hand. This case, unlike *Gaubert,* does not involve a claim against the FDIC under the FTCA. Thus, the discretionary function exception to the FTCA has no application. Moreover, it is the FDIC who has brought suit here. As noted by the *O'Melveny* Court, "the FDIC is not the United States...." —— U.S. at ——, 114 S.Ct. at 2049. Therefore, it does not qualify for protection under the FTCA. Even assuming, for the sake of argument, that the FDIC as receiver qualified for protection under the discretionary function exception of the FTCA, the Court would be bound to find that the FDIC, by filing suit, had waived any sovereign immunity as to those matters upon which it sues. *See FDIC v. Hulsey,* 22 F.3d 1472 (10th Cir.1994). *See also Frederick v. United States,* 386 F.2d 481 (5th Cir.1967). As explained by the Fifth Circuit:

> [W]hen the sovereign sues it waives immunity as to claims of the defendant which assert matters in recoupment—arising out of the same transaction or occurrence which is the subject matter of the government's suit, and to the extent of defeating the government's claim but not to the extent of a judgment against the government which is affirmative in the sense of involving relief different in kind or nature to that sought by the government or in the sense of exceeding the amount of the government's claims; but the sovereign does not waive immunity as to claims which do not meet the "same transaction or occurrence test' nor to claims of a different form or nature than that sought by it as plaintiff nor to claims exceeding in amount that sought by it as plaintiff.... This ties in with the distinction made in Rule 13 itself.

As defined in 13(c), a counterclaim may diminish or defeat the recovery sought by the opposite party—this far the government's waiver goes. It may also, but need not, "claim relief exceeding in amount or different in kind from that sought in the pleading of the opposing party." The government does not go so far as to waive its immunity to this kind of claim.

*Frederick,* 386 F.2d at 488 (footnotes and citations omitted).

Accordingly, it is ORDERED that the affirmative defenses Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, and 22, to the extent that they are based on actions taken by the FDIC as receiver, be, and the same are hereby, DISMISSED.

## VI. *INTERLOCUTORY APPEAL*

■ A district court may certify an order of interlocutory appeal under 28 U.S.C. § 1292(b) if (1) it involves a "controlling question of law;" (2) there is "substantial ground for difference of opinion" with respect to that question; and (3) immediate appeal "may materially advance the ultimate termination of the litigation."[13] There is no doubt that this order satisfies all three requirements of § 1292(b).

First, the question of what affirmative defenses are available against the FDIC, either in its corporate capacity or in its capacity as receiver, in light of *O'Melveny* unquestionably involves a controlling question of law. It goes to the central issue in this case and, consequently, directly bears on the manner in which the case will be tried. Second, that there is substantial ground for a difference of opinions is evident from the very fact that this Court has reconsidered and retreated

from its earlier reading of *O'Melveny* in its order of September 23, 1994.[14] Finally, a resolution by the Fifth Circuit Court of Appeal of the issues at this juncture obviously would best serve the interests of both the Court and the litigants in judicial economy and efficiency.

## VII. *CONCLUSION*

Based upon the above findings, it is hereby ORDERED as follows:

1. The FDIC's Motion for Summary Judgment is GRANTED IN PART as to the affirmative defenses Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, and 22, to the extent that they are asserted against the FDIC in its corporate capacity for actions taken by it or other regulatory agencies.

2. The FDIC's Motion for Summary Judgment is GRANTED IN PART as to the affirmative defenses Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, and 22, to the extent that they are based on actions taken by the FDIC as receiver.

3. The FDIC's Motion for Summary Judgment is, except as heretofore granted in part, DENIED.[15]

4. This order involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from this order may materially advance the ultimate termination of the litigation. Accordingly, this order is certified to the United States Court of Appeals for the Fifth Circuit for review pursuant to 28 U.S.C. § 1292(b). The controlling question of law, as this Court views it, is as follows: What affirmative defenses may be as-

---

**13.** To satisfy § 1292(b), the district judge must state in his order that he is of the opinion that the order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

**14.** Further evidence that there is substantial ground for difference of opinion is found in the conflict between the decisions reached by the district courts after *O'Melveny.* *See RTC v. Ross* and *RTC v. Liebert* (holding that the "no-duty"

rule does not survive *O'Melveny* ). *But see RTC v. Edie, RTC v. Bright,* and *RTC v. Sands* (holding that *O'Melveny* does not apply when the FDIC brings suit in its corporate capacity and, consequently, "no-duty" rule bars affirmative defenses against it).

**15.** The Court notes that at least one district court has certified the question of the availability of affirmative defenses against the RTC in light of *O'Melveny* for interlocutory appeal under 28 U.S.C. § 1292(b). *See Resolution Trust Corporation v. Fleischer,* 862 F.Supp. 309 (D.Kan.1994).

serted by former directors and officers of a failed bank against the FDIC, either in its corporate capacity or in its capacity as receiver of a failed Texas bank, in a post-FIRREA case in light of the Supreme Court's decision in *O'Melveny & Myers v. F.D.I.C.,* —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994)? [16]

---

**16.** Under § 1292(b) and Rule 5(a), Federal Rules of Appellate Procedure, the parties have ten days from the date of entry of this order to make application to the Fifth Circuit Court of Appeals for an appeal of this order.