**FEDERAL DEPOSIT INSURANCE COR-PORATION, as Receiver of Mechanics and Farmers Savings Bank FSB, Plaintiff,**

v.

**Francis J. COLLINS, Donald E. Farrar, Paul B. Haley, Marian L. Heard, V. Donald Hersam, Jr., Verne L. King, Stanley Manasevit, Leif H. Olsen, William J. Riordan, Vincent M. Simko, Charles F. Smithers, Jr., David J. Sullivan, Jr., Robert T. Switzgable, Edmund E. Tuska, Kevin M. White, Simko & Elstein, P.C., and the Simko Law Firm, L.L.C., Defendants.**

Civil A. No. 3:94CV01318 (TFGD).

United States District Court,
D. Connecticut.

March 8, 1996.

---

**6.** *Daniels,* 858 F.Supp. at 691.

440, 126 L.Ed.2d 374 (1993); *Daniels,* 858 F.Supp. at 691.

**7.** *Farm King,* 884 F.2d at 294.

Evan S. Widlitz and Jeffrey E. Dupler, Reid & Priest, New York City, for Plaintiff (FDIC).

Stephen R. Steinberg, New York City, for Defendants (Vincent Simko and Simko & Elstein).

### RULING ON PLAINTIFF'S MOTION TO STRIKE THE FOURTH AFFIRMATIVE DEFENSE (# 65)

EAGAN, United States Magistrate Judge.

The plaintiff, the Federal Deposit Insurance Corporation, as Receiver of Mechanics and Farmers Savings Bank FSB, moves pursuant to Federal Rule 12(f), to strike the fourth defense raised by the defendants, Vincent M. Simko and Simko & Elstein, P.C. For the following reasons, the FDIC's motion to strike is GRANTED.

### I. BACKGROUND

The FDIC seeks to recover in excess of $2.2 million dollars in damages sustained by the now defunct Mechanics and Farmers Savings Bank from fifteen former officers and directors of the bank and the bank's former attorneys, Vincent M. Simko and Simko & Elstein, P.C..

The defendant, Vincent M. Simko, was a director of Mechanics & Farmers from 1967 until August of 1991. From 1986 to 1991, he served as Chairman of the Audit Committee and as a member of the Executive Committee. He was also a principal in Simko &

Elstein, P.C., the defendant-law firm which provided legal services to the bank.

Simko and his law firm represented the bank in a July 1989 loan to Wildomar Square Associates, L.P., a real estate development group whose stakeholders had long standing and substantial lending relationships with Mechanics & Farmers.

The plaintiff alleges the attorney-defendants failed to properly counsel the bank regarding the Wildomar loan. Specifically, the complaint alleges:

> The Attorney Defendants represented the Bank in connection with M & F's July 1989 loan to Wildomar Square Associates, L.P. ("Wildomar"), an entity whose principals had loans from M & F already well in excess of the Bank's legal lending limits. Simko was an active and involved Bank director who knew or should have known that the Bank's loan to Wildomar was violative of federal lending limit regulations and that the Bank's monitoring of the aggregate size of loan lines was deficient. Despite this knowledge and the Attorney Defendants' expertise in the lending area both generally and for the Bank, the Attorney Defendants failed to investigate the lending limit issue, to properly counsel the Bank with regard thereto and to properly conduct and supervise the legal work regarding the loan, thereby allowing the loan to close notwithstanding the fact that it violated federal law to do so.

Plaintiff's Complaint, ¶ 3.[1]

In their answer dated December 27, 1994, the attorney-defendants raise several affirmative defenses. The fourth affirmative defense provides in relevant part:

122. From time to time as alleged in the Complaint, the plaintiff herein, the FDIC, and its coordinate regulator, the OTS, examined the Bank and entered into agreements with the Bank concerning alleged deficiencies in the Bank's policies.

123. The FDIC alleges herein that its reports dealt with the issue of the Bank's alleged violation of the loan to one borrower regulation.

124. Notwithstanding, the FDIC did not, in connection with the [June 26, 1990 Joint Memorandum of Understanding entered into between the Bank, the FDIC and the Office of Thrift Supervision], insist that the Bank establish a procedure whereby the Bank would determine whether any particular loan would violate federal regulatory standards.

125. The FDIC, now claiming that it was the responsibility of closing counsel to deal with regulatory issues, in view of its criticisms of the Bank's loan to one borrower compliance failed to cause the Bank to require the lending officers of the Bank to take compliance action, or to either engage regulatory counsel to deal with the issue, or to specifically charge closing counsel to investigate and research each loan to determine federal regulatory compliance.

126. By reason of the aforesaid, the FDIC is barred and estopped from making the claims it has made herein against the attorney defendants concerning their alleged failure to determine whether this one transaction violated federal loan to one borrower regulations.

127. The FDIC is barred and estopped, both in its corporate and receivership capacities, from claiming that (a) a closing attorney had the obligation to render an opinion concerning such matters as loan to one borrower regulations (b) and in not doing so the attorney defendants committed malpractice.

128. Had the FDIC believed that such was the province of closing attorneys, in connection with its review of the Bank and the MOU, it should

1. Based on these allegations, set forth in more detail in paragraphs 53 through 91, the plaintiff asserted claims against the attorney-defendants for: breach of fiduciary duty (Count V), negligence (Count VI), gross negligence (Count VII), breach of contract (Count VIII), derivative liability (Count IX), and failure to supervise (Count X).

have taken action to be satisfied that a closing attorney understood that it had such an obligation.

Answer, ¶ 122–128.

On December 27, 1995, the FDIC moved, pursuant to Rule 12(f) to strike the fourth affirmative defense. They argue that the fourth defense is legally insufficient because it: (1) alleges a breach of duty which is not in fact owed by the FDIC; and (2) challenges a discretionary judgment made by the FDIC in performing a regulatory function.

In response, the defendants argue the fourth defense does not challenge the FDIC's conduct in regulating the bank, nor does it charge that FDIC indiscretion caused Mechanics & Farmers' insolvency. They assert that because the FDIC did not require the bank, or its attorneys, to implement a procedure for monitoring compliance with federal banking regulations at the time that the Joint Memorandum of Understanding was entered, it should be estopped from now asserting the attorneys owed Mechanics & Farmers this duty. Additionally, the defendants argue the motion is untimely under Rule 12(f) because it was not filed within twenty days of the filing of the defendants' answer.

## II. *LEGAL STANDARD*

Fed.R.Civ.P. 12(f) provides:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

■ Although motions to strike affirmative defenses are generally disfavored, they become a useful tool for the court when the parties disagree only on the legal implications to be drawn from uncontroverted facts. *See* Moore, *Federal Practice*, ¶ 12.21[1]; 2A Wright & Miller, *Federal Practice & Procedure*, § 1381 (1990). Where the defense is insufficient as a matter of law, the defense should be stricken to eliminate the delay and unnecessary expense of litigating it at trial. *FDIC v. Eckert Seamans Cherin & Mellott*, 754 F.Supp. 22, 23 (E.D.N.Y.1990).

## III. *DISCUSSION*

### A. *The Motion To Strike Is Not Time–Barred.*

■ The defendants argue the motion should be denied as untimely. They point out that the motion was not filed within twenty days of the responsive pleading. Further, when given leave of this Court, plaintiff's counsel waited until six months after the breakdown of settlement negotiations to file its motion to strike.

■ Rule 12(f) authorizes the district court to act "upon the court's initiative at any time." This grant of judicial discretion "has been interpreted to allow the court to consider untimely motions to strike and to grant them if doing so seems proper.... In light of this, the time limitations in Rule 12(f) should not be applied strictly when the motion seems to have merit." 5A Wright & Miller, *Federal Practice and Procedure 2nd*, § 1380 (1990); *see also, Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 86 (S.D.N.Y.1974); *Sorensen v. Morbark Industries, Inc.*, 153 F.R.D. 144, 147 (N.D.Iowa 1992).

As discussed below, the motion to strike has merit, and the Court will not deny the motion on the basis that it was untimely filed.

### B. *Fourth Affirmative Defense Is Barred By The No Duty Rule.*

■ In *FDIC v. Raffa*, No. 3:94CV021 (AVC), slip op. at 7 (D.Conn., June 2, 1995), this Court, relying on a long line of federal case law interpreting FIRREA, concluded that "the FDIC cannot be held accountable for any alleged breach of duty or for any discretionary act made either pre- or post-bank closing." The Court struck the affirmative defense that the FDIC should be estopped from pursuing an action against the former officers and directors because of the FDIC's own wrongful acts as regulator and receiver. *Id.* at 12.

In so holding the Court explained, "if an affirmative defense includes the element of a duty owed by the FDIC, it is insufficient as a

**34**

matter of law. Similarly, if an affirmative defense challenges the discretionary acts of the FDIC, it is insufficient as a matter of law." *Id.* at 6.

The question presented by this motion to strike is whether the defendants' fourth affirmative defense, which asserts that the FDIC should be estopped in this action from claiming the attorney-defendants had a duty to advise Mechanics & Farmers that the Wildomar loan violated federal law, is legally sufficient in view of the Court's prior ruling in *Raffa?*

The Court concludes, the defendants' fourth affirmative defense is barred by the "No Duty" Rule adopted in *Raffa.*

Implicit in the defendants' estoppel-based argument is the proposition that the FDIC and the OTS, as federal regulators, had a duty to advise the attorney-defendants of their responsibilities to the bank and suggest a procedure for addressing the "loan to one borrower" problem. As this Court held in *Raffa,* a defense predicated on the FDIC's breach of duty or failure to act fails as a matter of law.[2]

In fulfilling its regulatory responsibilities the FDIC's duty runs only to the public and depositors. *FDIC v. Bierman,* 2 F.3d 1424, 1438 (7th Cir.1993); *FDIC v. Mijalis,* 15 F.3d 1314, 1324 (5th Cir.1994). Explaining the operative effect of the "no duty rule" on affirmative defenses challenging regulatory conduct, one district court noted:

"[N]othing could be more paradoxical or contrary to sound public policy than to hold that it is the public which must bear the risk of errors of judgment made by its officials in attempting to save a failing

institution." ... FDIC's own conduct cannot be used to defeat or reduce a recovery to the insurance fund because the FDIC does not act to benefit [the defendants]. Moreover, FDIC's conduct in fulfilling its mandate involves discretionary decisions that should not be subjected to judicial second guessing.

*FDIC v. Isham,* 782 F.Supp. 524, 532 (D.Colo.1992), *quoting FSLIC v. Roy,* 1988 WL 96570 (D.Md.1988).

The public policy rationale underlying the "no duty rule" in officer and director suits applies with equal force to affirmative defenses raised in actions against the failed financial institution's accountants and lawyers. *See e.g., FDIC v. Ernst & Whinney,* 1992 WL 535605 (E.D.Tenn.1992) (accountants); *FDIC v. Baker,* 739 F.Supp. 1401 (C.D.Cal.1990) (appraisers); *FDIC v. Benjes,* 815 F.Supp. 1415 (D.Kan.1993) (attorney); *RTC v. Heiserman,* 839 F.Supp. 1457 (D.Colo.1993); *In re Sunrise Securities Litigation,* 818 F.Supp. 830 (E.D.Pa.1993) (auditors); *RTC v. Moskowitz,* 1994 WL 229812 (D.N.J.1994) (attorneys); *FDIC v. Eckert Seamans Cherin & Mellott,* 754 F.Supp. 22 (E.D.N.Y.1990) (attorneys). There is no reason to allow third party professionals, but not officers and directors, to shift the burden of a financial institutions's loss to the public by calling into question the discretionary actions of federal bank regulators. *See, Heiserman,* 839 F.Supp. at 1468.

In *RTC v. Holland & Knight,* 832 F.Supp. 1532 (S.D.Fla.1993), the district court held differently, reasoning that public policy considerations are irrelevant in actions against third party professionals. *Id.* at 1537. The

---

**2.** Almost uniformly, district courts have held that former officers and directors, or third parties, such as attorneys and accountants, cannot assert affirmative defenses based on the FDIC's pre-failure regulatory conduct. *See e.g., FDIC v. Cheng,* 832 F.Supp. 181, 187 (N.D.Tex.1993) ("a federal banking agency, when bringing a tort claim as surrogate for the public, is exempt from affirmative defenses arising from its regulatory conduct that would normally apply to private individuals."); *FDIC v. White,* 828 F.Supp. 304, 306 (D.N.J.1993) ("The defense that the government should have caught and stopped us is easily rejected."); *RTC v. Scaletty,* 810 F.Supp. 1505, 1519 (D.Kan.1992) (the defendants may not pose

as a defense the conduct of the RTC, the FSLIC, or other regulatory agencies.); *RTC v. Sands,* 863 F.Supp. 365, 372 (N.D.Tex.1994) (the pre-conservatorship conduct of federal banking regulators cannot form the basis of an affirmative defense by alleged wrongdoers.); *RTC v. Ascher,* 839 F.Supp. 764, 766 (D.Colo.1993) (defenses of estoppel and regulatory reliance stricken where they implicate RTC's pre-receivership conduct.); *RTC v. Greenwood,* 798 F.Supp. 1391, 1397 (D.Minn.1992) (estoppel defense based on federal regulatory agency's failure to warn stricken as insufficient); *RTC v. Fite,* 1993 WL 463252 (W.D.Tex.1993).

court, did not bar the attorney-defendants from asserting the affirmative defense of "failure to mitigate damages" against the RTC. *Id.* Distinguishing officers and directors from professional defendants, the *Holland* court concluded that the rationale for the "no duty rule" is inapplicable where the third party professionals had no control, oversight function, or responsibility over the lending practices that caused the bank to fail. *Id.*

■ The Court disagrees with the reasoning in *Holland.* The "no duty rule" is founded on the principle that the discretionary judgments of federal banking regulators are to be afforded substantial judicial deference and protection. The focus in actions brought by the receiver should be on the alleged wrongdoers, and not shifted to the actions taken by the FDIC, or other regulatory agencies, in fulfilling their responsibility to the public as depositors. The public policy underpinnings of the "no duty rule" are of tantamount importance in suits against third party professionals as they are in actions against former officer and directors.

Moreover, even accepting the *Holland* rationale, the "no duty rule" is applicable under the particular circumstances of this case. In *Holland* the court cited the fact that the defendants were not responsible for the lending practices of the bank as the basis for not applying the "no duty rule". *Id.* at 1537. However, in this case the FDIC's claims against the attorney-defendants are based on the defendants' alleged failure to properly advise and counsel Mechanics & Farmers to ensure that their lending practices complied with federal law. Thus, *Holland* is distinguishable from the case at bar.

The Court affirms its prior decision in *Raffa,* holding the fourth affirmative defense is legally insufficient because the "no duty rule" prohibits the defense of estoppel based on pre-receivership, regulatory conduct.

## IV. *CONCLUSION*

For the foregoing reasons, the plaintiff's motion to strike the fourth affirmative defense is granted.