**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Housatonic Bank & Trust Co., Plaintiff,**

**v.**

**Henry F. HEALEY, Jr., James F. Rogers, III, David A. Einbinder, Saturno P. Francini, John A. Frey, James Uberti, and Joel M. Young, Defendants.**

**No. 3:91CV00342 GLG.**

United States District Court,
D. Connecticut.

Jan. 15, 1998.

[redacted]

Bonnie L. Amendola, Amendola & Amendola, LLC, Fairfield, CT, Harold James Pickerstein, Pepe & Hazard, LLC, Southport, CT, for Plaintiff.

Keith R. Fisher, Washington, D.C., Richard C. Robinson, Sorokin, Sorokin, Gross, Hyde & Williams, P.C., Hartford, CT, for Defendants.

## OPINION

GOETTEL, District Judge.

Plaintiff, the Federal Deposit Insurance Corporation ("FDIC"), as Receiver for Housatonic Bank & Trust Company ("HBT"), has filed an objection to Magistrate Judge Smith's Recommended Ruling dated October 22, 1997, which denied the FDIC's Motion to Strike the affirmative defenses asserted by defendants David A. Einbinder and Joel M. Young ("defendants"). In reversing his earlier decision on the Motion to Strike, the Magistrate adopted the holding of this Court in *FDIC v. Haines,* Slip Op., No. 3:94CV0473(AVC) —— F.Supp. —— [1997 WL 880675] (Ruling on Partial Motion for Summary Judgment dated Sept. 9, 1997)(Covello, J.), which held that the defendants' state-law affirmative defenses against the FDIC as receiver, addressed to post-receivership conduct, were not barred by the federal common-law "no duty" rule or by the discretionary function exception of the Federal Tort Claims Act, 28 U.S.C. § 2680(a). In so holding, *Haines* specifically rejected the rationale of two recent rulings of this Court in *FDIC v. Raffa,* 935 F.Supp. 119 (D.Conn.1995)(Eagen, M.J., Recommended Ruling adopted by Covello, J.), and *FDIC v. Collins,* 920 F.Supp. 30 (D.Conn.1996)(Eagen, M.J., Recommended Ruling adopted by Daly, J.).

Pursuant to Rule 72(a), Fed.R.Civ. P., the FDIC objects to the Magistrate's Ruling and asks us to depart from the holding in *Haines,* and adhere to the federal common-law "no duty" rule. Because of the conflict within this district on this issue, and the lack of Second Circuit precedent, we

review *de novo* the legal issues of whether the "no duty" rule survives recent Supreme Court decisions and whether the discretionary function exception of the Federal Tort Claims Act applies to bar the affirmative defenses raised by defendants.[1]

## Background

The FDIC in its receivership capacity has brought the instant suit against seven former directors and officers of HBT, a state-chartered bank, alleging that they repeatedly mismanaged HBT during the three years prior to its closing in February of 1991, despite two strong regulatory warnings. The FDIC asserts that defendants breached the duties of care due and owing to HBT by embarking on an aggressive lending program, which included the granting of large and risky loans in contravention of prudent banking principles, as well as HBT's own lending policies. The complaint sets forth four causes of action: common-law negligence; common-law gross negligence; gross negligence under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(k); and breach of fiduciary duty. By way of affirmative defenses, defendants Einbinder and Young have asserted that the FDIC, as Receiver of HBT, is guilty of negligence in its efforts to collect and realize on the collateral that HBT had acquired from the borrowers, and that the FDIC has failed to mitigate its damages. Significantly, the affirmative defenses at issue are addressed solely to conduct of the FDIC post-receivership. The FDIC in its Motion to Strike asserts that these affirmative defenses are legally insufficient based upon the established federal "no duty" rule, which precludes defendants sued

for damages allegedly caused to a federally-insured depository institution from putting the conduct of federal liquidators on trial. The FDIC further asserts that its conduct is protected by the discretionary function exception in the Federal Tort Claims Act, 28 U.S.C. § 2680(a).[2]

## Discussion

Our analysis of whether a federal common-law "no duty" rule applies to post-receivership conduct of the FDIC begins with an examination of the Supreme Court's decisions in *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), and *Atherton v. FDIC*, —— U.S. ——, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997), and their impact on the existence of federal common law. Defendants contend that, after *O'Melveny* and *Atherton*, there is no federal common law and, therefore, the federal common-law "no duty" rule cannot override state-law defenses. The FDIC disagrees and seeks to distinguish these decisions on the basis that they did not apply to post-receivership conduct of the FDIC in the discharge of its statutory duties, but rather to pre-receivership conduct of the former attorneys, officers and directors of the failed institution.

In *O'Melveny*, a suit by the FDIC as receiver of a federally insured savings bank, the Supreme Court addressed whether federal or state law governed the issue of whether the defendant-attorneys could impute knowledge of the bank's former officers to the bank, and thus to the FDIC as receiver. The defendant-attorneys had moved for summary judgment, arguing that under California law knowledge of the fraudulent conduct of the bank's controlling officers must be

---

**1.** While this Court must follow circuit court precedent, decisions of other district judges within the district are not binding or authoritative, although such decisions do have persuasive effect. *Spear v. Town of West Hartford,* 789 F.Supp. 80–84 (D.Conn.1992). "Although district judges within a particular circuit will frequently find each other's decisions persuasive, they remain free to disagree." *Hawkins v. Steingut,* 829 F.2d 317, 321 (2d Cir.1987).

**2.** The discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a), provides:

The provisions of this chapter and section 1346(b) of this title shall not apply to ——

    (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

imputed to the bank, and hence to the FDIC as receiver, thereby estopping the FDIC from pursuing its claims. The FDIC argued that federal common law, not California law, determined whether the knowledge of the bank's officers would be imputed to the bank. Alternatively, the FDIC argued that, even if California law determined the first issue, federal common law applied to the more narrow question of whether the bank's knowledge could be imputed to the FDIC as receiver. The Court initially cited *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), for the proposition that "[t]here is no federal general common law," and further noted "the remote possibility that corporations may go into federal receivership is no conceivable basis for adopting a special federal common-law rule divesting States of authority over the entire law of imputation." 512 U.S. at 83. The Court then addressed the question of whether federal law would preempt state law in those instances where the FDIC is suing as receiver. The Court first analyzed this issue assuming that FIRREA would apply and then, to avoid having to resolve the retroactivity question,[3] analyzed the issued assuming FIRREA did not apply.

Under the first scenario, the Court held that the FDIC as receiver "steps into the shoes" of the failed institution, "obtaining the rights 'of the insured depository institution' that *existed prior to receivership.*" *Id.* at 86 (emphasis added). Therefore, "any defense good against the original party is good against the receiver." *Id.* (internal citations and quotations omitted). The Court specifically rejected the argument that FIRREA, 12 U.S.C. § 1821(d)(2)(A)(i),[4] should be read as a *nonexclusive* grant of rights to the FDIC, which can be supplemented or modi-

fied by federal common law. Noting that FIRREA does in fact contain specific provisions that create federal rules of decision regarding claims by, and defenses against, the FDIC as receiver, the Court adhered to the principle of *"inclusio unius, exclusio alterius,"* the inclusion of one is the exclusion of another.[5] *Id.* The Court held "[t]o create additional 'federal common-law' exceptions is not to 'supplement' this scheme, but to alter it." *Id.* at 87.

Under the second scenario, assuming FIRREA did not apply, the Court held that this was not one of the "few and restricted" cases in which the judicial creation of a special federal rule would be justified. *Id.* Those cases are limited to situations where "there is a significant conflict between some federal policy or interest and the use of state law." *Id.* at 88 (citations and internal quotations omitted). The Court held that there is "not even at stake that most generic (and lightly invoked) of alleged federal interests, the interest in uniformity. The rules of decision at issue here do not govern the primary conduct of the United States or any of its agents or contractors, but *affect only the FDIC's rights and liabilities,* as receiver, *with respect to primary conduct on the part of private actors that has already occurred.*" *Id.* (emphasis added). The Court also rejected the argument that maximizing the FDIC's insurance fund was a sufficient justification for the creation of federal common law. Accordingly, the Court held that this was not one of those "extraordinary cases" in which the judicial creation of a federal rule of decision was warranted. *Id.* at 89. Thus, without resolving how the imputation issue should be decided under California law, the Supreme Court remanded the case to the Ninth Circuit.

---

3. In *O'Melveny,* the FDIC was appointed receiver of the S & L prior to the enactment of FIRREA in 1989. The Supreme Court stated: "We are reluctant to rest our judgment on FIRREA alone, however, since that statute was enacted into law in 1989, while respondent [the FDIC] took over as receiver ... in 1986 .... It seems to us imprudent to resolve the retroactivity issue on the basis of the FDIC's concession, since that would make our decision of limited value in other cases." 512 U.S. at 87.

4. Section 1821(d)(2)(A)(i) provides that:

> The Corporation [FDIC] shall, as conservator or receiver, and by operation of law, succeed to
> ---
>> (i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depository, officer or director of such institution with respect to the institution and the assets of the institution; ...

5. *Black's Law Dictionary* 763 (6th ed.1990).

Subsequently, in *Atherton, supra,* the Supreme Court revisited the issue of whether a court should look to state law, federal common law, or FIRREA, 12 U.S.C. § 1821(k),[6] to determine the proper standard of care applicable to the conduct of officers and directors of a federally-insured bank. The Court reaffirmed that state law sets the standard of conduct, so long as the state standard (such as simple negligence) is stricter than that of the federal statute. The Court interpreted the "gross negligence" standard of FIRREA as a floor, which applies only if the state standard is more relaxed. 519 U.S. at ——, 117 S.Ct. at 669. In reaching this conclusion, the Court first considered whether, in the absence of the gross negligence standard of FIRREA, state or federal law would provide the applicable legal standard. 519 U.S. at ——, 117 S.Ct. at 670. Recognizing that it had articulated a federal, common-law corporate governance standard in *Briggs v. Spaulding,* 141 U.S. 132, 11 S.Ct. 924, 35 L.Ed. 662 (1891), the Court reaffirmed that federal common-law standards did not survive *Erie. Id.* The Court held that federal common law should be created only when there is a significant conflict between a federal policy and the use of state law. After examining the several asserted federal interests, including the need for uniformity, the Court held that no significant conflict existed and that state law, not federal common law, provided the applicable rules for decision. *Id.*

The Court also rejected the argument that the "internal affairs doctrine"[7] required the application of federal common law. The Court held that "[n]othing in that doctrine suggests that the single source of law must be federal." *Id.* Indeed, the Court noted that the application of state law would avoid disparity between federally chartered and state-chartered banks. *Id.* The Court also noted, as in *O'Melveny,* that the FDIC was acting only as a receiver of a failed institution; it was not pursuing the interest of the Federal Government as a bank insurer. *Id.* 117 S.Ct. at 673.

In the instant case, the FDIC contends that *O'Melveny* and *Atherton* do not resolve the issue presented in this case, that being whether defendants are prevented from raising affirmative defenses based upon the post-receivership conduct of the FDIC, as opposed to defenses based upon the conduct of the bank officials that predated the receivership. The FDIC maintains that three circuit courts of appeals, the Fifth, Seventh, and Tenth,[8] and numerous district courts have endorsed the federal common-law "no duty" rule that precludes defendants sued for damages from attacking the conduct of the federal liquidators. The decisions applying the "no duty" rule have relied on one or more of following rationales: that federal regulators owe "no duty" to the former officers and directors to liquidate the assets of the failed institution in a manner that is most advantageous to them; that the regulators perform important discretionary functions, requiring a balancing of competing interests under FIRREA, that should not be subject to judicial second-guessing; that the discretionary function exemption of the Federal Tort Claims Act applies to the conduct of the regulators; that the public should not be required to bear losses due to errors in judgment of federal regulators; and that the

---

**6.** Section 1821(k) concerns the personal liability of directors and officers of an insured depositary institution in an action by or on behalf of the FDIC for "gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence), including intentional tortious conduct, as such terms are defined and determined under applicable State law."

**7.** The "internal affairs doctrine" refers to a conflict of laws principle that recognizes that only one State should have the authority to regulate a corporation's internal affairs. *Atherton,* 519 U.S. at ——, 117 S.Ct. at 672 (citing *Edgar v. MITE Corp.,* 457 U.S. 624, 645, 102 S.Ct. 2629, 73

L.Ed.2d 269 (1982)). States normally look to the state of a business' incorporation for the law that provides the relevant corporate governance general standard of care. *Id.* (citing Restatement (Second) Conflict of Laws § 309 (1971)). By analogy, application of this doctrine to a federally chartered bank would require a court to look to federal law for the standard of care governing officers and directors.

**8.** The FDIC cites to the cases of *FDIC v. Oldenburg,* 38 F.3d 1119 (10th Cir.1994), *cert. denied,* 516 U.S. 861, 116 S.Ct. 171, 133 L.Ed.2d 112 (1995); *FDIC v. Mijalis,* 15 F.3d 1314 (5th Cir. 1994); and *FDIC v. Bierman,* 2 F.3d 1424 (7th Cir.1994).

culpable defendants, whose conduct caused or contributed to the failure of the institution, should not profit from actions of the federal regulators. *See generally* Michael A. de Freitas, Annotation, *Availability of Affirmative Defenses in Action by Federal Deposit Insurance Corporation, Federal Savings and Loan Insurance Corporation, or Resolution Trust Corporation to Recover Against Officers and Directors of Failed Financial Institution,* 127 A.L.R. Fed. 423 (1995).[9]

The Second Circuit has not addressed the issue of whether the federal "no duty" rule survives *O'Melveny,*[10] and the district courts are split on this issue.[11] The only circuit court decision after *O'Melveny* to consider the issue of the applicability of the "no duty" rule to the affirmative defenses of failure to mitigate and contributory negligence is *FDIC v. Oldenburg,* 38 F.3d 1119, 1121 (10th Cir.1994), *cert. denied,* 516 U.S. 861, 116 S.Ct. 171, 133 L.Ed.2d 112 (1995). *Oldenburg* granted the FDIC's motion to strike these affirmative defenses, following the reasoning of the Fifth Circuit in *FDIC v. Mijalis,* 15 F.3d 1314, 1323 (5th Cir.1994), and the

9. Contrary to the expansive reading urged by defendants, *O'Melveny* has not been read by many lower courts as abrogating all federal common law. Following *O'Melveny,* a split in the circuits developed over whether the frequently invoked federal common-law *D'Oench, Duhme* doctrine survived the enactment of FIRREA. *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). *Compare Motorcity of Jacksonville, Ltd. v. Southeast Bank, N.A.,* 83 F.3d 1317 (11th Cir.1996), *vacated sub nom Hess v. FDIC,* —— U.S. ——, 117 S.Ct. 760, 136 L.Ed.2d 708, *after remand,* 120 F.3d 1140 (11th Cir.1997), and *Young v. FDIC,* 103 F.3d 1180, 1187 (4th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 329, 139 L.Ed.2d 255 (1997)(holding that FIRREA does not abrogate *D'Oench* ) *with DiVall Insured Income Fund Ltd. Partnership v. Boatmen's First Nat'l Bank of Kansas City,* 69 F.3d 1398, 1402 (8th Cir.1995), and *Murphy v. FDIC,* 61 F.3d 34, 38 (D.C.Cir.1995)(finding that after *O'Melveny, D'Oench* has been preempted by the FIRREA). *See also FDIC v. Houde,* 90 F.3d 600, 605 n. 5 (1st Cir.1996)(noting that the "continuing viability of the federal holder in due course doctrine is questionable"); *Dimuzio v. RTC,* 68 F.3d 777, 780 n. 2 (3d Cir.1995)(same). The *D'Oench* doctrine was a post-*Erie* federal estoppel doctrine that prohibited borrowers or guarantors from using secret or unrecorded side agreements to defend against efforts of the FDIC or its assignees to collect on promissory notes it had acquired from a failed institution. *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.,* 101 F.3d 1492, 1502 (3d Cir.1996).

Despite predictions that *Atherton* had resolved the previous split in the circuits, the Eleventh Circuit on remand adhered to its earlier decision in *Motorcity,* 120 F.3d 1140, holding that *Atherton* did not address the question of whether FIRREA abrogated the previously established and long-standing federal common-law *D'Oench* doctrine, created after *Erie.* Relying on *United States v. Texas,* 507 U.S. 529, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993), the court found a presumption in favor of retaining existing federal common law unless a statutory purpose to the contrary is evident. 120 F.3d at 1143. Accordingly, the court held that FIRREA did not displace the federal common-law *D'Oench* doctrine. More-

over, the court found that to hold otherwise would require it to overrule the Supreme Court's decision in *D'Oench,* which it could not do.

The Ninth Circuit, however, in *Ledo Financial Corp. v. Summers,* 122 F.3d 825 (9th Cir.1997), held to the contrary. In *Ledo,* the Ninth Circuit held that in light of *Atherton* and *O'Melveny,* there was no unique federal interest present to justify the application of any federal common-law rule, whether it be *D'Oench* or otherwise. 122 F.3d at 829 & n. 2.

Thus, a split in the circuits still exists. As Magistrate Judge Smith noted in his Recommended Ruling in the instant case, FIRREA contains essentially a codification of the *D'Oench* doctrine. Thus, arguably, since FIRREA does not contain an express codification of the "no-duty" rule, the need to preserve this common-law rule is even greater. *See* —— F.Supp. at ——, n. 3.

10. In *RTC v. Diamond,* 45 F.3d 665 (2d Cir.), *cert. denied,* 515 U.S. 1158, 115 S.Ct. 2609, 132 L.Ed.2d 853 (1995), on remand from the Supreme Court after *O'Melveny,* the Second Circuit discussed at length the holding of *O'Melveny.* The *Diamond* case, however, did not involve the application of federal common law. Rather, as the court noted, it was one in which the cause of action arose out of a provision of FIRREA, which specifically created a federal rule of decision, that being the right of the RTC to abrogate leases and contracts that it has determined are burdensome. *Id.* at 670.

11. *See, e.g., FDIC v. Schreiner,* 892 F.Supp. 848 (W.D.Tex.1995)(holding that the "no duty" rule survives *O'Melveny* with respect to affirmative defenses addressed to the conduct of the FDIC in its corporate capacity); *FDIC v. Pelletreau & Pelletreau,* 965 F.Supp. 381, 390 (E.D.N.Y.1997)(refusing to strike affirmative defenses based upon the "no duty" rule, and stating that this "complex and disputed issue" on which there.is no Second Circuit precedent is properly determinable only after discovery and a hearing on the merits); *RTC v. Gravee,* No. 94 C 4589, 1995 WL 678518 (N.D.Ill.1995)(noting split in the district courts).

Seventh Circuit in *FDIC v. Bierman,* 2 F.3d 1424, 1438 (7th Cir.1993). The court recognized that special public policy considerations distinguish banking cases from ordinary tort cases, where those affirmative defenses are normally available. 38 F.3d at 1121 (citing *Bierman,* 2 F.3d at 1438–39). The court further held that the FDIC owes no duty to the failed institution or to the wrongdoers who contributed to its failure, but rather it owes a duty to the public at large. *Id.* It also premised its holding on the conclusion that excepting the FDIC's conduct from such affirmative defenses is consonant with the discretionary function exception to the Federal Tort Claims Act. *Id.* (citing *Mijalis,* 15 F.3d at 1323–24). Although decided after *O'Melveny, Oldenburg* did not cite *O'Melveny.*

Until this Court's decision in *Haines,* this Court had consistently adhered to the federal common-law "no duty" rule, even after *O'Melveny.* In *FDIC v. Raffa, supra,* we recognized that the sole purpose of the FDIC under the Federal Deposit Insurance Corporation Act was to promote the stability of the banking system. 935 F.Supp. at 123. "The FDIC's regulatory oversight of banks is intended only to protect depositors, the insurance fund and the public." *Id.* Citing FIRREA [12] and numerous court decisions, we held that the FDIC owes no duty to the former officers and directors of a failed institution and that the FDIC's conduct in fulfilling its broad statutory mandate involved discretion that should not be subject to judicial second-guessing. *Id.* at 124 (citing *United States v. Gaubert,* 499 U.S. 315, 324, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), and *Bierman,* 2 F.3d at 1439). "In other words, the FDIC's own discretionary conduct cannot be used to defeat or reduce a recovery on the insurance fund." *Id.* Quoting from *FDIC v. Isham,* 782 F.Supp. 524, 532 (D.Colo.1992), we recognized

" ... nothing could be more paradoxical or contrary to sound policy than to hold that

it is the public which must bear the risk of errors of judgment made by its officials in attempting to save a failing institution—a risk which would never have been created but for defendants' wrongdoing in the first instance." ....

*Id.* Accordingly, we held:

The "No Duty Rule" paints a bright line that maintains the court's focus on the persons whose alleged wrongdoing brought about the insolvency in the first instance.... Therefore, if an affirmative defense includes the element of a duty owed by the FDIC, it is insufficient as a matter of law. Similarly, if an affirmative defense challenges the discretionary acts of the FDIC, it is insufficient as a matter of law.

*Id.* (internal citations and quotations omitted).

In *Raffa,* we specifically rejected the defendants' contention that the Supreme Court's decision in *O'Melveny* compelled a rejection of the federal common-law "no duty" rule. We noted that the Court in *O'Melveny* neither considered nor addressed whether state-law affirmative defenses implicating discretionary action of the FDIC could be raised against the FDIC. 935 F.Supp. at 125. Instead, we read *O'Melveny* in light of *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), which held that the decisions of federal regulators at the operational or managerial level are entitled to judicial discretion. *Id.* (citing *Gaubert,* 499 U.S. at 333). In *Gaubert,* the Supreme Court recognized the important federal interests that require deference to the discretionary actions of the FDIC. 499 U.S. at 323. Further, we noted that FIRREA explicitly recognized (indeed, grants) the broad discretion afforded bank regulators. *Raffa,* 935 F.Supp. at 125. Thus, we held that, if allowed, the defendants' state-law affirmative defenses would assail the discretionary acts of the FDIC and would clash with the federal interest of granting deference to discretionary acts of the FDIC. *Id.* at

**12.** 12 U.S.C. § 1823(d)(4)(the Corporation in its discretion may purchase and liquidate or sell any part of the assets of the insured institution); 12 U.S.C. § 1821(d)(2)(J)(ii)(the FDIC may take any action authorized by this chapter which it determines is in the best interests of the institution, its

depositors, or the Corporation); 12 U.S.C. § 1821(c)(13)(B)(ii)(the FDIC as receiver may make any other disposition of any matter concerning the institution, as it determines to be in the best interests of the institution, the depositors and the Corporation).

126. This, we held, would present a significant conflict between federal policy and state law. *Id.* Thus, in accordance with the decisions of other circuits, we held that the affirmative defense of failure to mitigate damages must be stricken,[13] as well as the defense of contributory/comparative negligence.[14]

*FDIC v. Collins, supra,* adopted the holding of *Raffa* in granting the FDIC's motion to strike the defendants' estoppel-based affirmative defense premised on an alleged duty of the FDIC to the defendants, attorneys for the failed institution.

However, as noted above, in *Haines,* Judge Covello, who had previously adopted the Magistrate's recommended ruling in *Raffa,* expressly rejected the holdings of *Raffa* and *Collins.* —— F.Supp. at ——. He based his holding on his reading of the first portion of *O'Melveny,* in which the Court assumed FIRREA applied. —— F.Supp. at —— —— (citing *O'Melveny,* 512 U.S. at 86–87). Contrary to *Raffa,* Judge Covello held: "The relevant portion of the *O'Melveny* analysis unambiguously held that courts may not modify or supplement FIRREA with a federal common law rule." —— F.Supp. at ——. Finding that there was no statutory provision in FIRREA to limit the affirmative defenses presented, Judge Covello held that there was no significant conflict between state law and federal policy which would warrant the adoption of federal common law. Indeed, he found the reasoning of *Raffa* and *Collins* flawed insofar as they found a significant policy or interest that would justify the invocation of federal common-law. Judge Covello reasoned that this was directly contrary to *O'Melveny,* in which the Supreme Court rejected the argument that there was a public policy to enrich the insurance fund. —— F.Supp. at ——. He also disagreed with *Raffa,* and *Collins* to the extent that they focused on the alleged wrongdoing of the defendants, a final conclusion that could only be determined after trial.

In *Haines,* however, the Court overlooked the fact that *O'Melveny* never addressed the issue presented in the instant case, or in *Haines,* for that matter. *O'Melveny* held that a state-law standard of conduct should be applied to determine whether *pre-receivership* conduct of a failed institution's controlling officers should be imputed to the institution and that federal common law did not displace state law, where the FDIC was suing as receiver. The Supreme Court relied on the language of 12 U.S.C. § 1821(d)(2)(A)(i), which states that the FDIC "shall" succeed to all rights of the institution existing prior to receivership. The Court held that *this* provision should not be supplemented or modified by federal common law. *See O'Melveny,* 512 U.S. at 86. The Court, however, never discussed the impact of 12 U.S.C. § 1821(d)(2)(B), (C), (D), or (E), which concern the discretionary powers and authority of the FDIC to operate the institution *post*-receivership. Moreover, all of the provisions of FIRREA cited by the Court as specifically creating special federal rules of decision regarding claims by, and defenses against, the FDIC apply to pre-receivership activities. 512 U.S. at 86–87.

Similarly, *Atherton* did not resolve the issue presented in the instant case, because *Atherton* concerned the proper standard of care applicable to pre-receivership conduct of former officers and directors of a failed institution. Indeed, as noted by the Supreme Court in *O'Melveny,* "the remote possibility that corporations may go into federal receivership is not a conceivable basis for adopting a special federal common-law rule." 512 U.S. at 83.

We also disagree with *Haines* in rejecting the holdings of *Collins* and *Raffa.* First, *Haines* misconstrues the federal interest relied upon in *Raffa* as the basis for finding a "significant conflict" with state law. *Raffa* did not premise its holding on the federal interest in maximizing the insurance fund. Instead, it relied on the "federal interest in granting deference to FDIC discretionary acts," 935 F.Supp. at 126, which has been repeatedly recognized by the federal courts.

Both *O'Melveny* and *Atherton* recognized a continued, albeit limited, role for federal common law where there is a "significant

---

13. *See Oldenburg,* 38 F.3d at 1121; *Mijalis,* 15 F.3d at 1323; *Bierman,* 2 F.3d at 1438–41.

14. *See FDIC v. Oldenburg, supra; FDIC v. Baker,* 739 F.Supp. 1401, 1407 (C.D.Cal.1990).

conflict between some federal policy or interest and the use of state law." *Atherton*, 519 U.S. at ——, 117 S.Ct. at 670. Indeed, in *Atherton*, the Supreme Court cited *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), as an example of an instance where the Court found a significant conflict between a federal interest—protecting discretionary decisions by government contractors from judicial second-guessing—and state law.[15] Just as in *Boyle* (as recognized by *Atherton*), the potential for a "significant conflict" exists in this case with respect to the affirmative defenses that defendants seek to assert. The defenses of failure to mitigate damages and contributory negligence would require the Court to scrutinize discretionary decisions made by the FDIC after assuming receivership of the Bank and in implementing the significant policies of FIRREA. FIRREA specifically grants discretion to the FDIC in operating the institution and in liquidating its assets. *See* 12 U.S.C. § 1821(d). There is nothing, however, in the statute that imposes on the FDIC the duty to conduct its liquidation activities in a manner that would minimize the potential liability of former officers and directors of the institution. State law that would hold the FDIC liable for its failure to mitigate damages would present a "significant conflict" with federal policy embodied in FIRREA and should be displaced. This result is also in keeping with the federal policy found in the discretionary function exception to the Federal Tort Claims Act.[16]

Additionally, a closer reading of *O'Melveny* reveals that *Collins* and *Raffa* do not contradict its holding regarding the lack of a suffi-

cient federal interest in maximizing the insurance fund to justify imposition of federal law. The portion of *O'Melveny* that discusses the existence of an important federal interest was premised on the assumption that FIRREA did not apply, which is not true in this case, nor in *Haines*. Furthermore, the Court was considering not the "conduct of the United States or any of its agents or contractors, but ... only the FDIC's rights and liabilities, as receiver, *with respect to primary conduct on the part of private actors that has already occurred*." *O'Melveny*, 512 U.S. at 88 (emphasis added). In this instance, the defendants' affirmative defenses are premised only on the conduct of the FDIC itself that occurred after assuming receivership of the bank.

*Haines* also disagreed with *Raffa* and *Collins* to the extent that they entail a presumption of wrongdoing on the part of the defendants. *Raffa* cites *FDIC v. Baker, supra*, for the proposition that it would be contrary to sound public policy to require the public to bear the risks of errors made by the FDIC in attempting to save a failing institution, a risk that would not have existed but for the defendants' wrongdoing in the first instance. The quote from *Baker*, however, does not stand for the proposition that the defendants' liability should be pre-judged, but rather for the proposition that defendants should not be relieved of liability they would otherwise have by virtue of acts taken by the FDIC as receiver in its efforts to minimize losses occasioned by the failure of the institution.

In *Haines*, Judge Covello also noted that there is no statutory provision in FIRREA to

---

**15.** In *Boyle*, the Supreme Court stated:

Displacement [of state law by federal law] will occur only where, ..., a "significant conflict" exists between an identifiable "federal policy or interest and the [operation] of state law,"... or the application, of state law would "frustrate specific objectives" of federal legislation.... The conflict with federal policy need not be as sharp as that which must exist for ordinary preemption when Congress legislates "in a field which the States have traditionally occupied." .... But conflict there must be....
487 U.S. at 507–08 (citations omitted). The Court then cited the discretionary function exception of the Federal Tort Claims Act ("FTCA") as "a statutory provision that demonstrates the

potential for, and suggests the outlines of, 'significant conflict' between federal interests and state law in the context of Government procurement." *Id.* at 511. Holding that the selection of the appropriate design for military equipment involved a discretionary function, the Court found that " 'second-guessing' of these judgment ... through state tort suits against contractors would produce the same effect sought to be avoided by the FTCA exemption." *Id.*

**16.** *See FDIC v. Meyer*, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)(holding that the post-receivership conduct of FSLIC, to which the FDIC is the successor agency, was protected by the Federal Tort Claims Act).

limit the affirmative defenses presented. Although there are no express limitations within FIRREA as to these particular defenses (of course, if there were, we would not even have to consider the applicability of federal common law),[17] as noted above, FIRREA clearly provides for the discretionary authority given to the FDIC in acting as a receiver. *See* 12 U.S.C. § 1821(d). Moreover, if the defendants were to bring a tort action against the United States for the negligence of the FDIC-receiver, the Federal Tort Claims Act would apply and the discretionary function exception would bar any claims based upon an act or omission in the execution of FIRREA, or based upon the exercise of a discretionary function. 28 U.S.C. § 2680(a). *See First Nat'l Insur. Co. of America v. FDIC,* 977 F.Supp. 1060, 1064 (S.D.Cal.1997).

*Haines* also relied on the fact that section 1821(k) specifically authorizes suits against officers and directors of failed institutions to proceed under state common law. The FDIC's authority to sue and be sued is set forth in section 1821(d), not section 1821(k). Section 1821(k) addresses only the standard of care applicable to conduct of the former officers and directors of a failed institution. It says nothing concerning the standard, if any, to be applied to the discretionary conduct of the FDIC, or the availability of affirmative defenses to an officer of director who has been sued for violating that standard. Indeed, section 1821(k) contains a "savings clause" that provides: "Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law." We do not read section 1821(k) as requiring the application of state law to the post-receivership conduct of the FDIC.

■ Thus, we respectfully disagree with the holding of this Court in *Haines* and find the better-reasoned approach to be that set forth in *Raffa* and *Collins*. In adhering to the federal "no duty" rule, which precludes state-law affirmative defenses that "second guess" the post-receivership conduct of the FDIC in liquidating the assets of a failed institution, we recognize the importance of protecting the broad discretion afforded the

FDIC under FIRREA. Our concern is not with adopting a federal common-law rule for purposes of national uniformity, but rather with the need to address the significant conflict between state-law defenses and the specific objectives of the federal program at issue—that being the restrictions that would be placed on the discretion afforded federal regulators.

### Conclusion

Therefore, we hold that the affirmative defenses of failure to mitigate damages and contributory negligence are legally insufficient and order that they be stricken pursuant to Rule 12(f), Fed.R.Civ.P. In so doing, we sustain plaintiff's objection [**Doc. # 155**] to Magistrate Judge Smith's Recommended Ruling [**Doc. # 154**].

---

**17.** *See RTC v. Diamond, supra,* 45 F.3d at 670.